## The Kemble Coal and Iron Co. *versus* Thomas A. Scott *et al.*

1. Plaintiffs agreed to "grant, let and lease" for the term of eleven years, "the exclusive right to mine, dig and take away the iron ore from four tracts of land;" "also the right to make tramroads, erect machinery, open tunnels, deposit dirt, and do all things necessary and appertaining to the mining of said ore." In consideration therefor, the defendants, an iron company, bound themselves and their successors to pay to the plaintiffs, their heirs or assigns, on the fifteenth day of each month, fifty cents per ton for every ton of ore mined and taken away the month previous. It was further provided, that for the first year the defendants should pay rent on as many tons as they might be able to mine, but for any period of three years thereafter, the rent in the aggregate was not to be less than $10,000, whether ore to that extent or amount was mined or not. The agreement was under seal and duly acknowledged and recorded. At the end of four years, the plaintiffs brought an action to recover the $10,000, for the last three years, under the covenant in the agreement. *Held*, affirming the court below, that the agreement was not an executory but an executed contract; that it was not an agreement for a lease or a license, but a present lease, and that this was not such a case as would justify the court in granting relief on equitable grounds.

2. The covenant in the lease was express, that for any period of three years after the first year the rent in the aggregate was not to be less than $10,000. *Held*, that there was not a word therein to support the idea that this was a mere stipulation, which might be avoided by abandonment or surrender of the contract by the lessees, or that the amount was not payable until the expiration of the entire term. *Held, further*, that if defendants ceased operations in 1873 and no royalty was demanded or paid before 1876, it was not therefore to be presumed that the contract was ended by the mutual consent of the parties.

3. In the negotiation immediately preceding the agreement, the vice-president of the defendant company, who conducted the negotiation, had written to plaintiffs that if the lease could be effected, defendants would take the risk of plaintiffs establishing their title to one of the tracts. *Held*, that it was proper to leave to the jury and for them to find "that the defendants took the tract, with knowledge of the title and at their own risk."

May 18th 1878. Before AGNEW, C. J., MERCUR, GORDON, WOODWARD and TRUNKEY, JJ. SHARSWOOD and PAXSON, JJ., absent.

Error to the Court of Common Pleas of *Bedford county:* Of May Term 1878, No. 166.

Covenant by Thomas A. Scott, Henry A. Stiles, executor of Robert H. Gratz, deceased, Samuel L. Russell and Jonathan H. Seymour against The Kemble Coal and Iron Company, upon certain articles of agreement, the material portions of which will be found in the history of the case below. The defendant pleaded *non fecit conventiones, non fregit conventiones*, covenants performed, covenants performed *absque hoc*, payment with leave, &c., and that under these pleas defendant would offer in evidence at the trial :

1. All the facts and circumstances admissible in evidence under the pleadings without notice.

[Kemble Coal and Iron Co. v. Scott.]

2. All the facts and circumstances mentioned in the "additional affidavit of defence," filed October 12th 1876.

3. That the contract sued upon is not a lease, but a "license."

4. That the lapse of time and acquiescence of plaintiffs have been such as to render it inequitable to enforce a specific performance of the contract, which was executory.

5. That the tribunal required to be selected, by the contract, has exclusive jurisdiction in the premises.

6. That the railroad or branch road provided by plaintiffs at and before the making of the contract has not been constructed.

The defendant subsequently moved the court for leave and was allowed to amend as follows :

1. Amend pleas by adding to those already filed the plea of "performance with leave."

2. Amend special matter by adding want of title in plaintiffs to the land described in the article upon which suit is brought.

3. Misrepresentations and mistake as to the value, character, extent and accessibility of the iron ores supposed to be granted by the agreement.

5. General report and belief that a branch railroad would be constructed from, at, or near Mt. Dallas, to, or near to the iron ores mentioned and granted in the agreement, and that the contract was made upon that opinion and no such branch railroad was constructed.

6. That it was not possible, by any degree or amount of effort, to finish, tunnel and take out ore prior to the commencement of this suit.

7. That the iron ore does not exist in the premises granted, as was supposed and believed when the agreement was signed.

8. That defendants never took possession of the premises or any part thereof.

9. All the facts stated in defendants' "amended affidavit of defence," filed October 12th 1876.

10. All the facts stated in "defendants' pleas" and the first six items of the "notice of special matter."

11. That defendants executed the agreement under a mistaken belief, opinion or understanding of its construction, having signed the same with an honest belief that the clause requiring not less than $10,000 in any period of three years was not a covenant, but a mere stipulation ; for the non-performance of which, the contract might be revoked or cancelled by plaintiffs.

12. Concealment in this—plaintiffs or some of them, or some person, with their knowledge, sunk a shaft upon the ore vein within or near to the premises embraced in the agreement, and found it to be small ; not of sufficient quantity to justify tunnelling and other expenses necessary to reach and obtain it, and this information was withheld from defendants until after the execution of the agreement in suit.

The additional affidavit of defence above alluded to, was made by William Lauder, an agent of defendants, and averred that certain promises and representations of plaintiffs in regard to the construction of a railroad from the leased lands were part of the inducement which led the defendants to execute the contract; that the nature and character of the soil, and the rock therein were such, as to render it impossible to reach the ore so as to take out the quantity named, and that there was no evidence that there was any ore on the premises, or in sufficient quantities to justify mining and the taking of the number of tons required by the contract. And that this question had never been referred to, or decided by the tribunal provided in the contract itself.

The material facts of the case were these:

In 1856, William P. Schell and S. H. Tate purchased from Frederick Mensch, the right and privilege " to dig, take and carry away all such iron ore and other minerals as may be on, in and under that part of a tract of land owned by said Mensch," in Black Valley, Bedford county. By sundry sales and conveyances, the title of Mr. Schell became vested in the plaintiffs. In 1872, the plaintiffs held or claimed thirteen tracts of land or ore rights, and timber or surface rights to the balance.

In the same year, these plaintiffs granted to defendant, The Kemble Coal and Iron Company, " the exclusive right to mine, dig, and take away the iron ore" from tracts Nos. 3, 4, 6 and 7, with the right to use timber from No. 7 and also from tract No. 2, for the period of eleven years from April 1st 1872. This agreement was executed May 15th, May 30th, June 11th, and was delivered July 13th 1872. It required the payment of fifty cents per ton royalty for each and every ton of ore mined and taken, contained a clause compelling the grantors to allow the defendant the option to purchase the properties held by them south of the Juniata river, some twelve tracts, at any time within one year, if defendants saw fit to do so, at and for the sum of $100,000. It also contained a clause in these words, " For the first year of the lease the parties of the second part are to pay rent on as many tons as they may be able to mine, but for any period of three years thereafter the rent in the aggregate is not to be less than $10,000, whether ore to that extent or amount is mined or not, unless the irregularities of the ore-vein, should to the satisfaction of the said parties of the first part prove so great as to prevent the said parties of the second part from taking out ore to that amount, and in case of a difference of opinion between the parties hereto on this point, they are to submit this matter to three disinterested referees to be selected thus: one by the parties of the first part, and one by the said parties of the second part, and the third by the two parties, so selected; but should the said parties of the second part pay rent in excess of the ore mined and taken away for any

[Kemble Coal and Iron Co. v. Scott.]

period, they are to have the privilege to take said ore during any after-period of and within the said term of eleven years, but not after said term has expired."

Mr. L. T. Wattson, the vice-president of the defendant company, during the negotiations which resulted in this agreement, wrote a letter to S. L. Russell, one of the plaintiffs, dated March 23d 1872, wherein he said, "If you will ascertain whether tracts 3, 4, 6 and 7 of the Black Valley lands will be leased together, we taking the risk of your establishing the title to No. 3, I will see what can be done towards getting a railroad."

In 1872, the Huntingdon and Broad Top Railroad was finished, and cars were running thereon from Huntingdon to Mt. Dallas. The Bedford and Bridgeport Railroad was finished from Mt. Dallas to Bedford, thence to Bridgeport, where it connected with Pittsburgh and Connellsville Railroad, and thence to state line, where it connected with the Cumberland and Pennsylvania Railroad. The Kemble Coal and Iron Company had two furnaces in operation at Riddlesburg, some fourteen miles north of Mt. Dallas. The lands embraced in the agreement were about three miles south-east from Mt. Dallas. The Southern Pennsylvania Railroad was in process of construction, and the lands were near its contemplated and surveyed route. The Bedford and Bridgeport Railroad Company had resolved to build a branch road to these lands. The Pennsylvania Railroad Company owned nearly all the stock and all the bonds of the Bedford and Bridgeport Road. Mr. Russell was a stockholder therein. So was the Kemble Coal and Iron Company, and L. T. Wattson, vice-president of this company, was a director as well as stockholder. Soon after the execution of the agreement, in 1872, the defendants, finding that the land leased was too high to enable them to reach the ore to advantage, purchased ten acres of adjoining and lower land. Upon this the work of driving a tunnel was at once commenced, and continued vigorously for one year, at a cost of about $5000. To have reached the ore, they alleged, would have required between three and four years of additional time, and at least $15,000 of expense. In the meantime, defendants, as they averred, having learned that the veins were thin and irregular, and Barndollar and Baughman having given notice that they claimed title to one of the tracts of land embraced in the agreement, and it appearing that this tract contained at least one-third of all the ore embraced in the agreement, and that being the portion nearest the railroad, and first to be mined, and that no branch railroad was likely to be constructed, ceased operations, and so notified plaintiffs. No counter notice was given and no demand was made for royalty until the fourth year of the lease, when plaintiffs brought this action. The case was reached for trial in January 1878.

[Kemble Coal and Iron Co. *v.* Scott.]

The trial was before Hall, P. J. The following assignments of error, all of which are passed upon by this court, will show the various questions raised in the court below.

1st error: The court erred in their ruling on the fourth offer of evidence, as follows: John Fulton on the stand: Defendants proposed to prove by this witness the nature, character, extent and value of the land embraced in the agreement in suit. The difference between the actual location of the ore-vein in the ground from that contained on the draft proved by Mr. Russell. Also that at the time of the agreement in suit and prior thereto it was a well-known fact that a branch railroad was about to be constructed from the railroad then in being at or near Mt. Dallas, to or in the direction of the ores leased. That this fact was well known to defendants; that it was a principal inducement for the execution of the contract; that said branch railroad was not constructed by reason of any fault of defendants. Also the character and distance of the proposed tunnel; and that by no reasonable human agency could ore have been reached prior to the bringing of this suit, and that ore does not exist in the premises in such quantity as to justify mining.

The counsel for the plaintiffs object to the foregoing offer for the reasons following:

1. The testimony is irrelevant to the issue. 2. It is not competent for the defendants to give evidence of rumors as to the construction of a branch railroad. 3. The offer does not allege that the plaintiffs held out the building of a railroad as an inducement to the contract. 4. In the absence of fraud or mistake the agreement must stand and cannot be contradicted. 5. There is no warranty expressed or implied in the agreement as to the nature, character or extent of the ore-veins, and the defendant took the same at its risk.

PER CURIAM.—" It is competent to show the non-existence of ore in the land, or that it is in a seam too small for mining; to that extent evidence admitted. Rumors about building of a branch road with which the plaintiffs were not connected are incompetent. So, also, the representation of the supposed general course of the ore vein on the draft unless there was misrepresentation."

2d error: The court erred in their ruling on the sixth offer of evidence, as follows: L. McDonald on the stand: Defendants propose to prove that in the ground the ore-vein is not to be found in one entire tract of land measuring two hundred and ten rods, upon or in and through which the vein of ore is represented as passing upon the map proved by Mr. Russell. This to show a mistake calculated to mislead the defendants at the time the agreement was executed. That this is No. 10, and embraced in the offer of lands to defendants at $100,000.

" Objected to, for the reason that the tract referred to is not em-

[Kemble Coal and Iron Co. *v.* Scott.]

braced in the lands leased for mining purposes. Rejected, and exception to defendants."

3d error: The court erred in their ruling of the seventh offer of evidence, as follows: William Lauder on the stand: Defendants propose to prove that the agreement in suit was executed by defendants upon the honest conviction and belief (whether correct or erroneous) that the clause relating to the payment of $10,000 in any period of three years was a mere stipulation, and could·be avoided by relinquishing the contract. And that the negotiations which led to the execution of the agreement were all so interpreted and understood by defendant.

PER CUR.—"The witness having stated that he was not present at any negotiations that led to lease, and had no knowledge of them from plaintiffs or any of them, the offer is rejected and bill sealed to defendants."

4th error: The court erred in ruling on the eighth offer of evidence, as follows: Defendants offer written opinion of Messrs. Hall and Jordan given to Messrs. Barndollar and Baughman at the time of their contemplated purchase from Frederick Mensch, in favor of the Mensch title and adverse to that of plaintiffs. This for the purpose of showing that the title of plaintiffs was not a good marketable title. Objected to as irrelevant.

PER CUR.—"It is not made to appear upon what statement of facts this opinion is based. Rejected, and exception to defendants."

5th error: The court erred in their answer to defendants' first and second points, as follows:

1st point. That covenants are not to be presumed; that the agreement in suit contained no express covenant to pay $10,000 in any period of three years, and the language of the agreement on that subject is a mere stipulation, which may be avoided by abandonment or surrender of the contract by defendants.

2d point. That no action can be sustained for royalty due at the end of four years, except for the price of ore actually mined. Any action for ore not taken can only be sustained after the termination of the entire term.

Ans. "First and second points refused."

6th error: The court erred in answering the sixth, tenth and eleventh points submitted by defendants, as follows:

6th point: That although there may have been no want of good faith on the part of plaintiffs, yet if the defendants placed a construction upon the agreement different from that of the plaintiffs, even if such construction of defendants was erroneous, and in so doing defendant committed a mistake which a fair and reasonable man, under the circumstances, might have fallen into, without gross ignorance or supine negligence, then no specific performance of the contract should be enforced, and the verdict should be·for defendants.

9 NORRIS—22

[Kemble Coal and Iron Co. *v.* Scott.]

10th point: A contract may be so inequitable and unjust, may contain so much of hardship on one hand and so small a consideration on the other, as to raise a legal presumption that it was not understood at the time of its execution; and if the jury believe that the defendants made a mistake at the time this agreement was executed by supposing that they could abandon the mine and thereby avoid liability in case it became impossible to find ore, or to reach it if found, then there should be no specific performance of this contract and the verdict should be for defendants.

11th point: That circumstances and surroundings, as they exist when an agreement is executed enter into a contract, and this one should not be enforced if entered into by defendants under an actual and honest misunderstanding on a material point.

Ans. "We have answered these points in the general charge. You cannot assume that the defendants misconstrued the meaning of the article; the presumption is that they understood the instrument, and there is no evidence we have heard to the contrary."

7th error: The court erred in their answer to the seventh point of defendants, as follows: That in proportion to the severity of the terms imposed by the one party upon the other, it becomes incumbent on the former to see that the terms are explicitly stated. If the plaintiffs have used terms in the agreement which are reasonably capable of misconstruction, then the defendants may construe them in the manner most advantageous to the company.

Ans. "This has no application to the case."

8th error: The court erred in omitting entirely to answer defendants' ninth point, which was as follows: That specific performance of a contract should not be decreed where it was executed by either party under an honest mistake, even though such mistake was not caused by the other party nor unless it is strictly equitable to do so, nor where the bargain is hard, unequal, unjust or oppressive, nor where it will operate in a manner different from that which was in contemplation of the parties at the time when it was executed.

9th error: The court erred in their answer to defendants' twelfth point, which point and answer were as follows:

12th point: If the jury believe that the defendants executed the agreement in suit under the impression and belief that a branch railroad would soon thereafter be constructed, from the railroad then existing to some point at or near the iron ores granted in the agreement, and that this belief was a principal inducement to the execution of such contract; that such branch railroad was not constructed, by reason of unforeseen causes, then the contract is inoperative and invalid, and the verdict should be for defendants.

Ans. "We have answered this in the general charge. Nor if Mr. Wattson had a project for getting a branch railroad, with which the plaintiffs were not connected in any way, either in fact

or by making representations in the negotiations of the contract, would that entitle them to relief. Was a branch road promised by plaintiffs, which has not been built? or did they hold out any inducement of a road in any way? Did the evidence establish this? You cannot find it on the assertion or argument of counsel, unless there is evidence of it."

10th error: The court erred in their answer to defendants' fourteenth point, as follows: That if the jury believe that in September 1873, defendants ceased all operations, and that this fact was then or soon after made known to plaintiffs, and that no royalty was demanded or paid before March 1876, then they have a right to presume that the contract was ended by the mutual consent of the parties.

Ans. " Refused."

11th error: The court erred in their answer to defendants' fifteenth and sixteenth points, which points and answer were as follows:

15. That the agreement of Frederick Mensch with S. H. Tate and William P. Schell, dated February 8th 1856, does not convey title to the iron ore contained in the land therein described; that equity will not now decree a specific performance of that contract; that the title of plaintiffs to that tract of land (106 acres), and the iron ore therein, was and is radically defective, and if the jury believe that this property was and is material to defendants, then there should be no decree for performance, and the verdict should be for defendants.

16. That the evidence in the case established the fact that the title of plaintiffs to the Fred. Mensch tract is not a marketable title; that it is surrounded with doubts and uncertainties sufficient to prevent a decree of specific performance, and therefore the verdict should be for defendants.

Ans. " We reserve these points, to be determined, if necessary, on a motion for a new trial. If you find that the defendant had full knowledge of the difficulties with regard to the Mensch title, and took it at their own risk, we will not have to determine these points; there could be no time now to do so without great inconvenience and delay to other suits. You may make a special finding on this point. You can say whether you find it affirmatively or negatively; that he did purchase with knowledge and at his own risk, or that he did not; if not, then was that tract essential to the contract, and did the purchasers fail to pay the balance of the purchase-money?

12th error: The court erred in their answer to defendants' seventeenth point, which point and answer were as follows: That the letter of L. T. Wattson, Esq., of March 23d 1872, to Hon. S. L. Russell, does not establish the position that defendants took the risk of title to tract No. 3. No such provision is contained in the

agreement itself, which is the consummation of the contract, besides there is no evidence that plaintiffs ever did anything thereafter to establish the title to said tract No. 3.

Ans. "The letter of Mr. Wattson, the vice-president, is dated 23d March 1872 ; the contract was consummated soon after. It is not a contradiction of the articles. If in fact the contract was consummated on the basis of the letter, then the defendants would be bound by the offer of Mr. Wattson in the letter."

13th error : The court erred in their answer to plaintiffs' second point, as follows : That said agreement having been put upon record on the 7th day of September 1865, prior to the conveyance by Mensch to Baughman and Barndollar, of the date of November 14th 1871, they, Barndollar and Baughman, took the same, subject to whatever rights Tate and Schell had under such agreement.

Ans. "Affirmed."

14th error : The court erred in their answer to the third point of plaintiffs' below, which point and answer were as follows : That if L. T. Wattson was the person who negotiated the lease with plaintiffs, had knowledge of the alleged defect of title of the plaintiffs in the Mensch tract, and accepted the terms of the lease, agreeing to take the risk of the title thereto, then the defendants cannot set up said alleged defective title as a defence in this case.

Ans. "Affirmed."

15th error : In answering the 4th and 6th points of defendants, the court erred in using the following language : "And (if) the iron ore is there and in sufficient quantity, and not affected by irregularities so as to prevent taking out 20,000 tons, the verdict should be for the plaintiffs for $10,000, with interest from the time it fell due, provided you find the defendants took tract No. 3, at their own risk."

16th error : The court erred in not affirming the fourth point of defendants below, and directing a verdict for defendants. Said fourth point was in these words : "That all the evidence in the case does not present such a state of facts and circumstances as would move a chancellor to decree a specific performance of the contract in suit, and therefore the verdict should be for defendants."

The verdict was for the plaintiffs, for $11,075, "and that defendants took the Mensch tract with knowledge of the title and at their own risk." A motion for a new trial was refused, and judgment entered on the verdict. The defendants then took this writ, alleging that the court erred, as set forth in the foregoing assignments of error.

*John Cessna*, for plaintiff in error.—The contract upon which suit was brought was certainly executory, at least on the part of defendants, and we were therefore entitled to show any facts and circumstances at the time of its execution, such as would avoid it

or justify a court of equity in granting us relief. The court should, therefore, have admitted the evidence offered: Ley v. Huber, 3 Watts 367; Horbach v. Gray, 8 Watts 492; Case v. Cushman, 3 W. & S. 546; Philadelphia Ins. Co. v. Am. Life & Health Ins. Co., 11 Harris 65; Miles v. Stevens, 3 Barr 21; Boynton v. Hazelboom, 14 Allen 107. This contract was a license, not a lease: Doe v. Wood, 2 B. & Ald. 724; Johnstown Co. v. Cambria Co., 8 Casey 246; Huff v. McCauley, 3 P. F. Smith 206; Funk v. Haldeman, Id. 229; Gloninger v. Franklin Coal Co., 5 Id. 9; Dark v. Johnson, Id. 164. The court erred, as alleged, in the sixth, seventh, eighth and ninth assignments of error. Equity is ·a part of the law of Pennsylvania, and courts of law enforce equitable principles in actions of debt, assumpsit, covenant and ejectment: Williams v. Bentley, 3 Casey 294; Nicol v. Carr, 11 Id. 381; Piersoll v. Neill, 13 P. F. Smith 420; Graver v. Scott, 30 Id. 88. Execution of a contract will not be decreed where there was a clear mistake of fact. A marketable title was indispensable. A defect in the title of any one of the tracts defeated the right to recover. No royalty was ever paid, nor any demand ever made therefor. From this conduct of the parties it was to be presumed that the contract was ended by mutual consent. The lease was the consummation of the contract. It contained a covenant for title, and its binding force could not be weakened by the letter of Mr. Wattson, and there was no evidence that his knowledge as to the defect in the title to No. 3 was ever communicated to defendants, or that he had authority to assume any risks. The plaintiffs should not have been permitted to recover the price of the ore in these lands unless they showed they were the rightful owners.

*Russell & Longenecker* and *W. H. Koontz*, for defendants in error.—The contract was not a mere license, but the grant of a right: Moore v. Miller, 8 Barr 283; Clement & Masser v. Youngman & Walter, 4 Wright 345; Johnston v. Cowan, 9 P. F. Smith 280; Caldwell v. Fulton, 7 Casey 480; Harlan et al. v. The Lehigh Coal and Navigation Co., 11 Id. 289; Funk v. Haldeman, 3 P. F. Smith 243. The defendants were bound to pay for the ore whether mined or not: Fisher v. Milliken, 8 Barr 111; Powell v. Burroughs, 4 P. F. Smith 329; Johnston v. Cowan, 9 Id. 280.

The evidence as to matters antecedent or subsequent to the lease did not constitute such a defence as would relieve the defendants from liability. The assignments of error as to the marketable character of the title are all cured by the finding of the jury that the defendant " took the Mensch tract with knowledge of the title and at their own risk." Under the evidence the jury could not presume that the contract was ended by mutual consent. There was no evidence to show that defendant did not understand the agreement or made any mistake in supposing that the mine could

be abandoned, or that the contract was entered into in view of the contemplated railroad. There was no state of facts such as would warrant a chancellor in releasing defendants from their contract.

A re-argument was subsequently ordered, and the case was again heard on May 15th 1879, before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ. WOODWARD and PAXSON, JJ., absent.

*John Cessna*, for plaintiff in error.—We rely upon our paper-book and argument for 1878. In our fourth point we asked that the case might be taken from the jury because the plaintiffs closed their case without offering any evidence of title. Defendants pleaded want of title in plaintiffs. This was a traverse of their averment of performance and readiness to perform. In such an issue it was essential they should prove title: Negley v. Lindsay, 17 P. F. Smith 217; Heron v. Hoffner, 3 Rawle 400; Smith v. Webster, 2 Watts 478. Instead of compelling the plaintiffs to show title, the court permitted the jury to find that we had agreed to run the risk of title on the evidence contained in the letter of Mr. Wattson. The admission of this evidence and the instruction of the court thereon were manifestly wrong. The letter was not cotemporary with the agreement, but antedated it some time, and was clearly inadmissible to vary the legal effect of a contract under seal.

*L. W. Hall*, for defendants in error.—The words used in the agreement are "grant, let and lease." These words do not imply anything more than a covenant for quiet enjoyment: Maule v. Ashmead, 8 Harris 482. If there was defect of title in tract No. 3, Wattson, vice-president of the Kemble Coal and Iron Company, and the party who acted for them from the beginning to the end of this whole transaction, had full knowledge of it. This is shown by his letter to Mr. Russell, dated Philadelphia, March 23d 1872, wherein he asks, "whether tracts 3, 4, 6 and 7 Black Valley lands will be leased together, we taking the risk of your establishing title to No. 3." The lease was shortly afterwards drawn by Wattson, including tracts Nos. 3, 4, 6 and 7, "being contiguous tracts on the west side of Black Valley," and it was sent by Wattson to New York for execution. Whatever covenant may have been contained in the words above quoted was only an implied one. Where the lessee has notice of the defect of title, the implied covenant is rebutted.

A motion for a re-argument was again made, but refused.

Chief Justice SHARSWOOD delivered the opinion of the court, May 26th 1879.

[Kemble Coal and Iron Co. v. Scott.]

The agreement of May 30th 1872, between the parties to this action was not an executory but an executed contract. It was not an agreement that a lease should be made at a future time; but a present lease by the most apt and formal words, "grant, let and lease" for the term of eleven years from the 1st of April 1872, of "the exclusive right to mine, dig and take away the iron ore from four tracts of land in Black Valley, West Providence township, in the county of Bedford," "also the right to make tramroads, erect machinery, open tunnels, deposit dirt, and to do all things necessary and appertaining to the mining of the said ore." In consideration the lessees, the Kemble Coal and Iron Company, bound themselves and their successors to pay to the lessors, their heirs or assigns, on the fifteenth day of each month, fifty cents per ton of 2240 pounds for each and every ton of ore mined and taken away the month previous. It was provided that for the first year of the lease, the lessees were to pay rent on as many tons as they might be able to mine, but for any period of three years thereafter the rent in the aggregate was not to be less than $10,000, whether ore to that extent or amount was mined or not. The lease was executed by the lessors under their respective seals, and by the lessees under their corporate seal duly attested by their president and secretary, acknowledged by the several parties, and recorded July 13th 1872. Under it the lessees had the unquestionable and unquestioned right to enter upon the four tracts of land mentioned, and to commence to mine and take away the coal. It was a grant of the ore in place. This was an action at the end of four years to recover the $10,000 for the last three years, under the express covenant to that effect contained in the lease. Clearly then it was not a case in which the equitable rules and principles adopted in bills for specific performance by courts of chancery have any application. That there was iron ore in the tracts a subject-matter upon which the lease could operate, was not controverted. The learned judge in the court below, in his ruling on the fourth offer of evidence, and in his answers to the fourth and sixth points in the fifteenth error, expressly decided that it was competent for the defendants to show the non-existence of ore in the land or that it was in a seam too small for mining, or affected by irregularities so as to prevent taking out 20,000 tons. It follows that the learned judge below was entirely right in his answers to the sixth, tenth and eleventh points of the defendants below, complained of in the sixth assignment of error; in his answer to the seventh point complained of in the seventh assignment; in the answer to the ninth point in the eighth error, and in refusing to affirm the defendants' fourth point, as complained of in the sixteenth assignment. This last-dated point was "that all the evidence in the case does not present such a state of facts and circumstances as would move a chancellor to decree a specific performance of the contract in suit, and therefore the verdict should be

for defendants." All these points were based on the assumption that this action was brought for the specific execution of an executory contract for a lease, and not for rent due upon a lease actually executed. Much reliance is placed by the plaintiffs in error upon the decision of this court in Miles *v.* Stevens, 3 Barr 21. But that was an action brought to recover the purchase-money covenanted to be paid in articles for the sale of land. It was therefore in effect a bill by the vendor to compel the specific performance of a mere executory agreement to sell, and it was held accordingly that where such a contract is made under a mistake or in ignorance of a material fact, it is relievable in equity.

The evidence offered and rejected, which forms the subjects of the first, second and third assignments was clearly irrelevant and rightly rejected. It was not offered to be proved that any representations were made by the lessors as to the construction of any railroad; or that the building of any such road was held out by the lessors as an inducement to the execution of the lease. The fact that an ore-vein was not found in one entire tract, as represented in the map, was immaterial, because it was not embraced in the four tracts leased for mining purposes, but in the lands of which the defendants had the option to purchase, an entirely distinct and independent agreement. William Lauder by whom the offer was made to prove that the lessees executed the lease under the honest conviction that the clause relating to the payment of $10,000 in any period of three years was a mere stipulation and could be avoided by relinquishing the contract, stated that he was not present at any negotiations which led to the lease, and had no knowledge of them from the lessors or any of them. The refusal of the court to affirm the first and second points of the defendants was unquestionably right. The covenant in the lease was express that for any period of three years after the first year the rent in the aggregate was not to be less than $10,000, and there is not a word to support the idea that it was a mere stipulation which might be avoided by abandonment or surrender of the contract by the lessees, or that it was not payable until after the expiration of the entire term. Nor would the court have been justified on any principle in instructing the jury as they were asked to do in the fourteenth point, that if the defendants ceased all operations in September 1873, and no royalty was demanded or paid before March 1876, they might presume that the contract was ended by the mutual consent of the parties. This forms the subject of the tenth error assigned.

The remaining assignments—the fourth, eleventh, twelfth, thirteenth and fourteenth—relate to the alleged defect in the title of the lessors. Without stopping to inquire whether anything short of an eviction from all or part of the demised premises can be a defence by a lessee to an action for the rent, it was submitted to the jury to say whether the lessees did not know of the alleged

[Kemble Iron & Coal Co. v. Scott.]

defect and took the risk of it. The jury found "that defendant took the Mensch tract with knowledge of the title and at its own risk," and we think the evidence upon which this question was submitted to them was ample.

Having thus examined all the sixteen assignments, and finding no error of which the plaintiffs have any right to complain,

Judgment affirmed.