# Venture Oil Company, Appellants, *v.* Fretts.

[Marked to be reported.]

*Oil lease—Abandonment—Statute of limitations.*

A vested title cannot ordinarily be lost by abandonment in a less time than that fixed by the statute of limitations, unless there is satisfactory proof of an intention to abandon. A lease of a right to mine for oil, etc., stands on different ground. The title is inchoate and for purposes of exploration only until oil is found. If it is not found, no estate vests in the lessee, and his title, whatever it is, ends when the unsuccessful search is abandoned. If oil is found, then the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract.

An oil lease contained a grant of a right to mine for and remove oil for a fixed period of twenty years, at a royalty of one eighth of the oil so mined and removed. *Held*, that the right of the lessee was to explore for, and determine the existence of oil under the land, and if none was found, his right ceased when the explorations were finished and the lot abandoned.

Argued Oct. 18, 1892. Appeal, No. 176, Oct. T., 1892, by plaintiffs, Venture Oil Co. and C. D. Robbins, from judgment of C. P. Washington Co., Feb. T., 1892, No. 77, on verdict for defendants, A. E. Fretts et al. Before STERRETT, GREEN. WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Ejectment.

At the trial, before McILVAINE, P. J., plaintiff claimed title under a lease from Joseph M. Gamble, which was as follows:

"This lease made this 26th day of December, A. D. 1883, by and between Joseph M. Gamble of Cecil township of the county of Washington and state of Pennsylvania of the first part, and C. D. Robbins of Burgettstown, Washington county, state of Pennsylvania of the second part, Witnesseth: That the said party of the first part, in consideration of the stipulations, rents and covenants hereinafter contained, on the part of the said party of the second part, his executors, administrators and assigns, to be paid, kept and performed, has granted, demised and let, unto the said party of the second part, his executors, administrators and assigns, for the sole and only purpose of mining and excavating for petroleum, or carbon oil, gas or other valuable mineral or volatile substances: and for the laying of pipe, either under or on top of said surface, for transportation of oil or gas, all pipe laid for permanent use to be buried so as not

| 152 | 451 |
| 160 | 493 |
| 152 | 451 |
| 165 | 247 |
| 165 | 329 |
| 152 | 451 |
| 179 | 182 |
| 152 | 451 |
| 183 | 127 |
| 152 | 451 |
| 193 | 456 |
| 152 | 451 |
| 201 | 101 |
| 152 | 451 |
| d210 | 488 |
| 210 | 489 |

to interfere with plowing all that certain tract of land situate in Cecil township, Washington county and state of Pennsylvania and bounded and described as follows, to wit: [Here follows description of land.]

" It is further agreed by parties hereto that this lease is not to interfere with the sale of this farm until oil is found, and that the party of the second part is to stand between the party of the first part and any trouble or expense with the coal company, and that there is not to be a well within forty rods of any of the farm buildings without the consent of the party of the first part.

" To have and to hold the said premises for the purpose only unto the said party of the second part, his executors, administrators or assigns, for, during and until the full term of twenty years next ensuing the day and year above written.

" The said party of the second part hereby covenant, in consideration of said grant and demise, to deliver unto the said party of the first part his heirs and assigns, the full equal one eighth part of the petroleum or carbon oil, gas or other valuable mineral or volatile substances, discovered, excavated, pumped and raised on the premises herein leased, as produced or pumped in the crude state; the part            to furnish barrels or tanks for the same until proper pipe lines are provided.

" The said party of the first part is to fully use and enjoy the said premises for the purpose of tillage, except such part as shall be necessary for said mining purposes, and a right of way over and across the said premises to the place or places of excavating.

" The said party of the first part covenant to grant to the said party of the second part the right to remove any machinery or fixtures placed on said premises by the said party of the second part. The party of the second part covenant to commence operations for said mining purposes within six months from the execution of this lease on some one of the farms leased by said second party in this township and when oil is found in paying quantities then second party agrees to commence operations within sixty days upon the next adjoining farm leased by second party and so on until all lands leased in the township are tested to success or abandonment."

Defendants claimed title under an oil and gas lease made by grantees of Gamble. Other facts appear by the opinion of the Supreme Court. Plaintiff's points were as follows :

"1. The title acquired by Robbins under the lease made with Joseph M. Gamble, dated December 26, 1883, in the premises therein described, was a complete, unconditional and fully executed grant so far as the lessor was concerned, of a vested, legal estate in the said land for the full term of twenty years, and a failure on the part of Robbins to fully comply with the executory covenants which were to be performed by him would not defeat his right to recover the said land in an action of ejectment, and the remedy of the lessor in such case would be an action for damages upon the covenants contained in his lease." Refused. [1]

"2. If the jury find from the evidence that Robbins commenced operations for mining purposes on the Joseph L. Scott farm in Cecil township within six months from December 26, 1883, and in due course of time completed the drilling of said well; and if they further find that no oil had been found upon any farm adjoining the Gamble farm or any of the other farms leased by him in Cecil township up to the date of the entry by plaintiffs upon the Gamble land, then he had fully complied with the covenants contained in the contract made with the said Gamble, and under such circumstances no presumption of abandonment could arise, and the verdict of the jury must be for the plaintiffs." Refused. [2]

"3. The doctrine of abandonment is only applicable where the party against whom it is sought to be applied has been guilty of laches in the performance of a duty or obligation necessary to support his rights, and has no application to cases where the right or title arises out of an executed grant with all covenants performed; and if the jury find from the evidence that Robbins has fairly and honestly performed all the covenants made by him in the Gamble lease, then their verdict must be in favor of the plaintiffs for the land in dispute." Refused. [3]

"4. If the jury find from the evidence that Robbins, up to the time of bringing this action of ejectment, had complied with all his covenants made with Gamble with reference to his operations as required under his lease, then he had such

an estate or interest in this land as could only be lost by his surrender or release thereof or by an adverse possession for such a length of time as to give title under the statute of limitations." Refused.    [4]

"5. To sustain the claim of the defendants of an abandonment by Robbins of his right to the Gamble land, the burden is upon the defendants to show affirmatively an intention on his part to abandon altogether the further prosecution of his mining operations on the land leased; and if the jury find that from the date of the said lease on up to the date of this suit, he has been engaged from time to time in the drilling of wells for oil and gas in Cecil township, or any territory immediately adjacent thereto, these facts are strong evidence to repel any presumption of such abandonment."    Refused. [5]

Binding instructions were given for defendants. [6]

Verdict and judgment for defendants.    Plaintiff appealed.

*Errors assigned* were (1–6) instruction, quoting them.

*A. M. Todd*, with him *John W. & A. Donnan* and *John M. Braden*, for appellants, cited Watson v. O'Hern, 6 Watts, 362; Lyon v. Miller, 24 Pa. 392; Koch & Balliet's Ap., 93 Pa. 442; Chitty, Cont., 89; Metcalf, Cont., 67; Singerly v. Thayer, 108 Pa. 299; Stoddard v. Emery, 128 Pa. 441; Whitcomb v. Hoyt, 30 Pa. 410; Jacobs v. Figard, 25 Pa. 45; Putnam v. Tyler, 117 Pa. 584; Hoffman v. Bell, 61 Pa. 454; Bunting v. Young, 5 W. & S. 188; Urket v. Coryell, 5 W. & S. 83; Neglee v. Albright, 4 Wh. 300; Smyles v. Hastings, 22 N. Y. 217; Wyman v. Hurlburt, 40 Am. Dec. 466; 2 Wash. R. Prop., p. 457; Kemble Coal & Iron Co. v. Scott, 90 Pa. 332; Thompson v. Christie, 138 Pa. 230; Barker v. Dale, 3 Pitts. 190; Turner v. Reynolds, 23 Pa. 199; Duffield v. Hue, 136 Pa. 603; Karns v. Tanner, 66 Pa. 297; Barker v. Dale, 3 Pitts. 190.

*Charles McCandless* and *H. M. Dougan*, with them *David Sterrett* and *Taylor & McIlvaine*, for appellees, cited 2 Wash. R. Prop. 106; Sharp v. Wright, 28 Beavan, 150; McCully v. Pittsburgh & Connellsville R. R., 32 Pa. 25; Anderson v. Brinser, 129 Pa. 391; Duffield v. Hue, 129 Pa. 94; Duffield v. Hue, 136 Pa. 602; Duffield v. Rosenzweig, 144 Pa. 520; Clement v. Youngman, 40 Pa. 341; Funk v. Haldeman, 53 Pa. 229; Dark v. Johnston, 55 Pa. 164; Union Petroleum Co.

v. Bliven Petroleum Co., 72 Pa. 173 ; Watson v. O'Hern, 6
Watts, 362; Koch's Ap., 93 Pa. 442; P. & C. R. R. Co.'s Ap., 99
Pa. 179; Muhlenberg v. Henning, 116 Pa. 143 ; Petroleum
Co. v. Coal, etc. Co., 89 Tenn. 382; Thompson's Ap., 101 Pa.
225 ; Chetham v. Williamson, 4 East, 469; Johnstown Iron Co.
v. Cambria Iron Co., 32 Pa. 241 ; Doe v. Wrighte, 2 B. & Ald.
719 ; Grubb v. Bayard, 2 Wallace, Jr., 81 ; Mountjoy's Case,
Anderson, 307 ; Newmoyer v. Andreas, 57 Pa. 446 ; Brown v.
Beecher, 120 Pa. 590 ; Huff v. McCauley, 53 Pa. 206 : Kreutz
v. McKnight, 53 Pa. 319 ; McKinney v. Reader, 7 Watts, 123;
Russell v. Baughman, 94 Pa. 400 ; Mehaffey's Ap., 4 Penny.
502; Greider's Ap., 5 Pa. 422; Auer v. Penn, 92 Pa. 444;
Magaw v. Lambert, 3 Pa. 444; McNish v. Stone, [reported
below in note, page 457.]

OPINION BY MR. JUSTICE WILLIAMS, January 16, 1893 :

This appeal presents a somewhat novel state of facts.   The
evidence shows that in 1883, C. D. Robbins, then a well known
and experienced oil operator, procured leases upon a body of
farms in Cecil township, Washington county, aggregating about
fifteen hundred acres.

The territory covered by these leases was at that time wholly
undeveloped, and the object of the several lessors as well
as of the lessee was to ascertain by the actual use of the drill
whether it was underlaid with oil.   One of these leases was
obtained from J. M. Gamble, whose farm included one hundred
and eighty-two acres ; and this is the lease out of which the
controversy in this case arises.   The object of the lease is stated
to be the "mining and excavating for petroleum or carbon oil,
gas, or other valuable mineral or volatile substances," and it
provided that the operations should be begun on some one
of the farms covered by the leases held by Robbins in that
township within six months from the date of the lease.   In
case oil should be found in paying quantities on any one of
the farms, operations were to be begun on the farm next ad-
joining within sixty days thereafter, and continued at the same
rate "until all lands leased in this township are tested to suc-
cess or abandonment."

Within the six months Robbins began operations on the
farm of J. L. Scott and drilled a well upon it to the depth of

two thousand two hundred and forty-seven feet. Neither oil nor gas was found. This seems to have been regarded by all parties a sufficient depth to test the farm, and it is evident that Robbins thought it a test of the value of the region, and con- cluded that the territory covered by his leases was worthless as oil territory. He accordingly drew the casing soon after the well was finished and then plugged the well and abandoned it. When asked upon the witness stand why he abandoned the well he replied : " Because it was no good." He made no further effort to test any part of the land covered by his leases, but removed his machinery and drilling tools to other localities in which he prosecuted his business as an explorer for, and a pro- ducer of oil. This was in the fall of 1884. Some six or seven years later, nothing further having been done by Robbins on any one of the farms covered by his leases of 1883, Gamble made a new lease of his farm to other parties under whom the defendants claim title, and operations were at once begun on the land.

Robbins and the Venture Oil Co. holding under him then brought this action of ejectment to the February term, 1892, asserting a right of entry under the lease of 1883. The case depends therefore on the construction of that lease and the rights acquired by Robbins under it.

The contract does not purport to be a sale of all the oil under the farm of J. M. Gamble, but a grant of the right to mine for and remove oil for a fixed period, twenty years, at a royalty of one eighth of the oil so mined and removed. The right of the lessee or grantee under its provisions was to explore for, and determine the existence of, oil or gas under the farm. If none was found, the rights of the grantee ceased when the explora- tions were finished. If oil or gas was found in paying quan- tity, then the contract took effect as an oil lease, and the lessee had a right, and was under a contract obligation, to operate the land for the production of oil during the time and upon the terms fixed in the lease. When he entered upon the Scott farm and began to drill, he commenced the search for oil or gas that he contracted to make with Gamble. It was then his duty to continue the search with reasonable diligence until he had prosecuted it " to success or abandonment " as to each farm to which his contract related. If the search on the Scott farm

had been successful, the manner in which it should be prosecuted upon the others was provided for in the contract. If it was a failure, then the contract was silent as to what should be done. It had been left to Robbins to determine whether another well should be drilled or not. If he was satisfied with the test made, he had a right to abandon the leases. He was bound to test each farm to "success or abandonment," so as to operate the territory, or let go his hold upon it, but he was not bound to drill upon each farm if satisfied by the result of the first well that the territory was not productive. He could abandon whenever he was satisfied from the search made that the further expenditure of time and money upon any given farm, or upon the body of farms covered by his leases, would· be fruitless. Whenever he did so abandon a given farm, or the whole body of leased farms to which his contract referred, his rights therein were at an end: Duffield v. Hue, 129 Pa. 94; McNish et al. v. Stone et al.,* a case not yet in the reports [reported below in footnote].

---

*Appeal, No. 213, May T., 1879, by plaintiff, from judgment of C. P. McKean Co., for defendant, on trial by court without jury.

Ejectment by McNish against Stone tried under act of April 22, 1874, without jury.

Robertson executed lease to Haffey, on Dec. 20, 1864, as follows:

"The said party of the first part, for the considerations expressed in the covenants and agreements hereinafter set forth, and mutually entered into, do lease unto the said party of the second part, his heirs and assigns, the exclusive right to bore or mine for seneca oil or other minerals, on the following described land, etc.

"Also the right to enter upon said premises and occupy the same or so much thereof as many be necessary to prospect, bore, mine, or otherwise to search for, find, and procure seneca oil or minerals, and as may be necessary for the erection of machinery, store-houses, vat manufactories, or other needed buildings, and the right to construct necessary roads to and from said buildings or premises, and the use thereof.

"Also the right to divide and sub-divide into as many shares, parts, or sub-divisions, either by undivided interests or by division and measurement on the ground, as the party of the second part may elect, and the same to sell, assign or transfer at pleasure. To have and to hold the said rights and privileges hereunto granted, with the appurtenances, unto the said party of the second part, his heirs, executors, administrators, and assigns, for the full period of ninety-nine years from the date above written, for the purpose of procuring oil or minerals. Said party of the second part to have the privilege of removing any buildings, machinery, etc.,

Upon this view of the leases of 1883 the recitals in the deeds in the line of the defendant's title are without significance.

---

which they may have erected.  Said party to commence operations within six months from date, either on said lot or within half a mile of its boundaries.

" In consideration of the above, the said party of the second part agrees to render unto the party of the first part the one tenth of all the oil or minerals procured from said premises."

The court found the following facts in an opinion by WILLIAMS, P. J., now Mr. Justice WILLIAMS of the Supreme Court:

"That Robertson, the owner of the land, made the foregoing lease, which was acknowledged and recorded.  That on January 20, 1865, Haffey assigned the lease to the King Oil & Mineral Co., a New York corporation with a nominal capital of $20,000, held in equal proportion by each of ten persons named in the article of incorporation as trustees, of whom Haffey was one, he being also superintendent.  That the company, through Haffey, on February 12, 1865, contracted with Francis and Franklin Dean for the boring of an oil well on the Shepherd farm (which was within one half mile of the land in controversy) to the depth of one thousand feet.  It was stipulated that on notice from the company that the hole is of sufficient depth (not less than seven hundred feet) to satisfy them that search is fruitless, Deans should cease operations, and take pay for the actual depth to which the well should then be sunk.

" That Deans began the well within six months after the date of the lease and continued operations until the fall of 1865, when they had reached a depth of nine hundred and two feet, when they were notified by Haffey for the company and by another trustee and shareholder, that the hole was of sufficient depth to satisfy them that the search was fruitless, and they were directed to cease operations, which they accordingly did.

" That during the following spring the company sold its boiler, engine and drilling tools, and they were taken away by the purchasers, the company also took down its engine-house and the branch from the derrick, and removed the lumber and materials from the premises, leaving only the derrick frame standing (which remained until it fell down from decay), and went wholly out of possession and occupancy of said Shepherd farm, and have remained out ever since, and abandoned the search for oil thereon.  That the company has at no time commenced or prosecuted the work for boring for oil or other mineral within one half mile of land in controversy except in the single instance of the well put down on the Shepherd farm in 1865, and at no time has possession of the land in controversy been taken or have operations been commenced or prosecuted for oil or other minerals thereon.

" The plaintiff claims under the company.  Robertson sold the land to Stone who had no actual knowledge of the lease of December 20, 1864.

" That the land has been shown by developments within the last two years to be valuable oil territory and has a producing well upon it put

They were notice of no greater interest than Robbins actually had by virtue of the leases referred to. If the defendant had

---

down by defendants. That there were no operations by any other parties in the neighborhood until the time when the plaintiffs made demand for entry upon the premises under their contract, and were refused by the defendants, and that at no time had the defendants called upon or required the plaintiffs to proceed. That the production of oil has a tendency to drain the territory, basin or fountain, in which the wells are located. After a region is developed as oil territory, therefore, the landowner and the lessee who desires to secure the benefit of the oil under his land must push his operations pari passu with those of adjoining owners, otherwise the value of his land and its capacity for producing oil will be steadily diminished by the operations around him.

"CONCLUSIONS OF LAW.

"From a careful consideration of this case we have reached the following conclusions of law, which seem to us conclusively to dispose of the title upon which the plaintiffs rely.

"1. The agreement of December 20, 1864, contemplates the production of oil and the return to the lessor of rent or royalty out of the oil produced. It must, therefore, be construed with reference to the known character of the oil business and the evident intention of the parties.

"2. The covenant to 'commence operations within six months,' etc., is not performed by commencing and then indefinitely suspending operations; but operations begun within the time limited must be prosecuted in the manner in which the business is ordinarily conducted, and with ordinary diligence, until the 'search for oil is ended,' either by finding it and operating the territory, or failing to find it and surrendering the possession.

"3. The operations begun on the Shepherd farm in February, 1865, suspended by the direction of the King Oil & Mineral Co., because of the declared conviction that the hole was sufficiently deep and further search useless, and never since resumed (no entry having been made on the land in controversy, or search made thereon), is not such performance of the contract on the part of the lessee as invests it with the right to the possession of this land for the full term of ninety-nine years.

"4. Such suspension of operations, abandonment of the search, and relinquishment of the possession of the Shepherd farm continued for over twelve years (nothing more having been done under said contract meanwhile) amount to a surrender of the rights acquired under the contract of December 20, 1864.

"5. The contract of December, 1864, is peculiar, and one of those instruments to which the development of the oil business has given rise. It is not a grant of land or a present leasehold interest therein. It is not a grant of the mineral, etc., in place or under the land; but the 'right to search for oil,' etc., and the right to enter and occupy for the purpose of such search and for no other. If the search is fruitless it is at the cost of the explorer. When the search is abandoned the right of entry is gone. But,

made the fullest inquiry as to the provisions of the leases, and the extent of the search made by Robbins on the land, it could have resulted in the discovery of no more than the evidence in this case discloses, viz.: a discontinuance of the search in 1884, and an abandonment of the Gamble lease, with the others, as unproductive and worthless. With these facts before them they would have been fully justified in concluding that after seven years no title in Robbins survived, and that a lease from Gamble would confer upon them an unquestionable right to enter upon and operate the land.

Cases like the Kemble Coal and Iron Co. v. Scott, 90 Pa. 332, have little or no resemblance to the case before us. A vested title cannot ordinarily be lost by abandonment in a less time than that fixed by the statute of limitations, unless there is satisfactory proof of an intention to abandon. An oil lease stands on quite different ground. The title is inchoate and for purposes of exploration only, until oil is found. If it is not found no estate vests in the lessee, and his title, whatever it is, ends when the unsuccessful search is abandoned. If oil is found then the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract.

---

" 6. If the search is successful, then the explorer becomes a tenant for the purpose of operating the land at the rent agreed, and his right of possession exists not for the purpose of search but for the purpose of operating the oil or minerals which his search has discovered. Whether the tenancy exists depends, therefore, on whether the oil, which is its object, is found to exist upon the land.

" 7. That notwithstanding the fact that the right or interest which passes under an agreement like the one under consideration is an incorporeal one, yet the agreement is 'a contract concerning lands,' which is within the recording acts.

" The finding of the court upon the whole case is in favor of the defendants."

*Errors assigned* were, inter alia, to the rulings contained in paragraphs 2–6 of the conclusions of law.

PER CURIAM, October 6, 1879:

We entirely concur in the conclusions of law of the learned judge below upon the facts as found by him and the judgment entered in favor of the defendant.

Judgment affirmed.

This view of the lease of the Gamble farm to Robbins in 1883 is conclusive upon the plaintiff's title, and renders the consideration of the other questions raised unnecessary.

The judgment is affirmed.

Cf. Glasgow v. Chartiers Oil Co., above, page 48, and Barnhart v. Lockwood, above, page 82, and May v. Oil Co., below, page 518.