## Munroe *versus* Armstrong et al.

| 96 | 307 |
|----|-----|
| 138 | 588 |
| 96 | 307 |
| 165 | 329 |
| 96 | 307 |
| 217 | ²474 |
| 217 | ²475 |

1. A lease of land was made exclusively for the purpose of producing oil. The work of boring for oil was to be commenced in ten days and continued with due diligence until success or abandonment; and if the lessees failed to get oil in paying quantities or ceased to work for thirty days at any time, the lease was to be forfeited and void: *Held*, that if the lessees failed to get oil in one well they had a right to put down another, and as many more as they pleased, so long as they worked with diligence to success or abandonment: *Held. further*, that a cessation of work for thirty days forfeited the lease.

2. Forfeiture for non-development or delay is essential to private and public interests in relation to the use and alienation of property. In general, equity abhors a forfeiture, but not where it works equity and protects a landowner from the laches of a lessee, whose lease is of no value till developed.

3. Brown *v.* Vandergrift, 30 P. F. Smith 142, followed.

November 15th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

Error to the Court of Common Pleas of *Butler county:* Of October and November Term 1879, No. 132.

Ejectment by A. M. Munroe against M. K. Armstrong, William Storey and A. B. Clark.

This action was brought to recover the possession of ten acres of land, a part of the Eli Reep farm, situate in Fairview township, Butler county, Pa., both parties claiming title through Reep. On the 31st of July 1877, Eli Reep, the owner of a large tract of land, executed a lease of ten acres thereof to A. B. Clark and Ross Lilly, for oil purposes, for the term of twenty years, reserving as a royalty or rent, one-eighth of all oil produced therefrom. Said lease also provided that the lessees should "commence operations within ten days, and continue to prosecute the work with due diligence until success or abandonment." Also, "the party of the second part, if they fail to get oil in paying quantities, or subsist (cease) to work for thirty days at any time, this article to be forfeited and to be null and void." The lessees entered into possession of the premises and made preparation to drill a well within the ten days required, and completed it during the latter part of October, the same year. The well proved to be dry, or, as expressed in oil parlance, "was a duster." The lessees, Clark & Lilly, within a few days after the completion of the well, pulled the casing and removed it, with the tools and greater part of the machinery, from the lease and vicinity, and either sold or used them elsewhere. Matters remained in this condition upon the lease from about November 1st 1877, nothing whatever being done thereon until the month of February 1878, when Reep called upon Lilly, one of the lessees, and asked him if he and Clark intended drilling another well upon the lease. Lilly said they did not; that he would not do anything more unless he (Reep) would give them a new lease of

[Munroe *v.* Armstrong.]

seventy-five acres, which˙ Reep said he would not do.   Reep said to Lilly that he would lease to other parties, as their lease was forfeited.   Lilly replied if I were in your place I would.   Reep called upon him a second time with like result.   Reep afterward, on the 21st day of March 1878, made and delivered to the plaintiff, Munroe, a lease for oil purposes, of seventeen acres, containing or embracing the ten acres in dispute, and which had been leased to Clark & Lilly.   Munroe was to commence operations within ninety days from date of lease, but by a subsequent arrangement, the time was extended by the parties.   Munroe, at the time of taking this lease, was sinking an oil well on the same farm, but upon another lease, and about July 1st 1878, was successful in obtaining oil in large quantities,   Soon after this M. K. Armstrong, one of the defendants, importuned Reep to lease to him the ten acres in dispute, when Reep informed him that he had leased it with other land to Munroe.   Armstrong then went in search of Clark & Lilly and purchased from them whatever interest they˙ had in the premises, taking an assignment upon the old lease.   Armstrong, in July 1878, went upon the ground and· commenced operating for oil. Munroe immediately notified him that the premises belonged to him and that he must desist.   He still persisted in˙ operating, and this suit was brought.   The well was completed about December 1st 1878, and had since been producing oil in large quantities.   Prior to the bringing of this suit, Armstrong had sold an interest in·the lease to William Story, his co-defendant.

The court held that there was no forfeiture under the lease made by Reep to Clark & Lilly and assigned to the defendants, and instructed the jury that they must return a verdict for the defendants, which was done.   After judgment thereon, the plaintiff took this writ and alleged that the court erred in thus instructing the jury.

*Eckley & Marshall* and *Thompson & Scott*, for plaintiff in error. —The court erred in not submitting the question of forfeiture to the jury, it being a fact proper for their consideration.   The plaintiff claimed that it was clearly a forfeiture.   This lease could have no value except by development.  ˙A forfeiture for non-development or delay cut off no valuable right of property, while such covenants were essential for the protection of private and public interests, in relation to the use and alienation of property, and was a protection to the lessor ˙against fraud, delay and non-performance. Time was the essence of the contract, and in cases like this, equity will follow the law and will enforce a covenant of forfeiture as essential to justice: Brown *v.* Vandergrift et al., 30 P. F. Smith 142; Stoughton's Appeal, 7 Norris 198.   The lease was to run for twenty years; any other construction would have given the party the right to hold it for the period mentioned in the lease without

[Munroe v. Armstrong.]

development or any benefit to the lessor. During which time also the adjacent lands might have been perforated with wells, and the oil of the lands of the lessor would have been exhausted by surrounding wells without any accruing benefit to Reep, the lessor. Armstrong can claim no equities, because before he took an assignment of the lease from Clark & Lilly he had full notice from Reep and Munroe that the land had been leased to the latter, who was in possession of the same. He also had notice of the forfeiture of said land to Clark & Lilly, and importuned Reep to lease the land to him, claiming that the lease to Clark & Lilly was forfeited.

*C. Walker* and *J. D. McJunkin*, for defendants in error.—Had there been any dispute in regard to the facts bearing upon the question of forfeiture, the only question in the case upon the trial below, the position of the plaintiff in error, would have been well taken. There was no dispute of this kind, however. That the work after the completion of the first well was suspended for more than thirty days, and that oil, in paying quantities, was not obtained in said first well, were clearly proven and freely admitted at the trial. Why then submit undisputed facts to the jury?

The whole question resolves itself into the single proposition, viz.: Did the court below err in interpreting the written lease and assignments under the light of the admitted and undisputed proofs, and in directing a verdict for the defendants? Or, does the lease bear such interpretation? The facts and circumstances of the case of Brown v. Vandergrift, *supra*, cited by counsel for plaintiff in error, were very different from those of this case. The argument that the ruling of the court below might have led to the land of Reep being drained, is not to control in a case such as this, where the lease was developed and is being properly worked. The rulings of the court, we contend, administered the law and certainly justice to the parties in this case.

Mr. Justice. TRUNKEY delivered the opinion of the court, November 26th 1880.

The lease from Reep to Clark & Lilly is for the term of twenty years, unless forfeited; exclusively for the purpose of producing oil; the work to be commenced in ten days, and continued with due diligence until success or abandonment; and if the lessees fail to get oil in paying quantities, or cease to work for thirty days at any time, the lease to be forfeited and void. As respects diligent prosecution of the work by the lessees, and what act of theirs would annul the lease, there is no room for interpretation, for the contract could not be expressed in simpler language. The agreement is plain that if the lessees failed to get oil in one well they had right to put down another, and as many more as they pleased, so long as they worked with diligence to success or abandonment, and equally

[Munroe v. Armstrong.]

plain .that a cessation of work for thirty days would end their lease. They were not bound to do more than make a reasonable search for oil, but they were bound to operate or quit; they could not hold on and be idle. The contract did not require them to keep on drilling oil wells indefinitely and without cessation, for twenty years nor for any indefinite length of time; neither did it entitle them, after the drilling of the well, to hold the lease for twenty years without working it. Even at the beginning of the lease, the. duration of the term was qualified by the words, "unless forfeited." The question seems to be, shall the concise and clear expression of the agreement of these parties, as written, give way to imaginary terms more favorable to the lessees ?

What is there in the circumstances calling for a fiction to defeat the covenant against delay in searching for or producing oil ? The subject of the lease was a fluid likely to flow for a considerable distance through the crevices and loose sand where it is found. A small tract of land could be nearly or entirely drained by wells on adjoining lands, and it is common that leases contain covenants for diligent operation and for forfeiture in case of suspension. An oil-lease yields nothing to the landowner, when not worked, and is an encumbrance on his land, tying his hands against selling or leasing to others; but when idle it costs the lessee nothing, and is valuable, or may prove valuable, if he can hold it awaiting developments in its vicinity. If a well be productive it is the interest of both lessor and lessee that it be continuously operated till its exhaustion, but if dry, it is of no value. Holding on to a lease after ceasing search is often for purposes of speculation, the thing which a prudent landowner guards against. Forfeiture for non-development or delay, is essential to private and public interests in relation to the use and alienation of property. In such cases as this equity follows the law. In general equity abhors a forfeiture, but not when it works equity and protects a landowner from .the laches of a lessee whose lease is of no value till developed, except for a purpose foreign to the agreement: Brown v. Vandergrift, 30 P. F. Smith 142.

At the trial, the parties admitted that Clark & Lilly commenced and completed a well, and kept their covenants up to October 1877; that from the 1st of November 1877 until July 1878, they ceased operations and did no work; that Clark and Lilly assigned to Armstrong, who, in the latter part of July 1878, put down a well and was successful in getting oil, which well was almost completed before this suit was brought; that Reep leased sixteen acres, including the ten in controversy, to Munroe, who had knowledge of the former lease to Clark & Lilly, and also of the time they had ceased work, and he took his lease from Reep at his own risk; that Armstrong .had knowledge of the fact that Reep had leased to Munroe before he took the assignment from Clark &

[Munroe v. Armstrong.]

Lilly, and before commencement of operations by Armstrong he had express notice not to go on to develop and expend money on the property, and that Munroe claimed and held the lease of the property.

In the rapid development and exhaustion of oil lands, cessation of work for nine months is a long period. Often, in far less time, the fluctuation in prices of lands and leaseholds is very great. Perhaps in no other business is prompt performance of contracts so essential to the rights of the parties, or delay by one party likely to prove so injurious to the other. Nothing in the facts proved or admitted shows a waiver of strict performance by Reep, or anything which in equity should relieve Clark & Lilly from the consequences of their broken covenant. It was the province of the court to declare the meaning of the agreement, and upon the admitted facts the jury ought to have been instructed to render a verdict for the plaintiff.

Judgment reversed and *venire facias de novo* awarded.