## FEDERAL OIL CO. v. WESTERN OIL CO. et al.

### (Circuit Court of Appeals, Seventh Circuit. October 7, 1902.)

### No. 871.

**1. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE.**

A court of equity will not decree specific performance of a contract which is unfair or unconscionable, or where performance by the complainant is entirely optional, and no offer of performance is made.

**2. SAME—OIL AND GAS LEASE—DELAY IN COMMENCING OPERATIONS.**

An oil and gas lease on 80 acres of land provided that, if a well was not commenced at once, the lessee should pay the lessor $8.75 per month during the delay. The lessor was to receive as a royalty one-eighth of the oil produced, and $100 per year for each producing gas well, together with gas for use in his residence. There was no limit as to time, no provision obligating the lessee to make any well, and the contract was terminable at its option. It drilled no well, but made the monthly payments for about eight months, when the lessor refused to accept further payments and leased to another party. *Held,* that the contract contemplated the exploration of the property at once; that the monthly payments were not a part performance, but merely a stipulated sum for delay in performance; and that the contract would not be specifically enforced, because of its want of mutuality and unfairness.

Appeal from the Circuit Court of the United States for the District of Indiana.

For opinion below, see 112 Fed. 373.

The appellant on November 18, 1901, filed its bill in the court below, setting forth that on February 22, 1901, it entered into an agreement with the Bradfords, appellees, as follows:

"In consideration of the sum of one dollar, the receipt of which is hereby acknowledged, R. W. Bradford of Van Buren, Ind., of the first part, hereby grant and guarantee unto the Federal Oil Company (a corporation) of Chicago, state of Illinois, second party, all the oil and gas in and under the following described premises together with the right to enter thereon at all times for the purpose of drilling and operating for oil and gas and to erect and maintain all buildings and structures and lay all pipes necessary for the production and transportation of oil or gas. The first part shall have the one-eighth (⅛) part of oil produced and saved from said premises to be delivered in the pipe line with which second party may connect their wells namely: All that certain lot of land, described as follows, to wit: South half of the northwest quarter of section ten (10) town twenty-five (25) north range nine (9) east, in county of Grant and state of Indiana, containing eighty (80) acres, more or less.

"To have and to hold the above-described premises on the following conditions:

"If gas only is found, in sufficient quantities to transport, second party agrees to pay first part one hundred ($100) dollars annually for the product of each and every well so transported, and the first part to have gas free of

cost for heating and lighting purposes in dwelling house. Second party shall bury all oil and gas lines when same interfere with cultivation, and pay all damage done by reason of operating under this grant.

"In case no well is commenced within one day from this date, then this grant shall become null and void unless second party shall thereafter pay at the rate of eight and seventy-five hundredths dollars ($8.75) for each month such commencement is delayed in advance. A check to the credit of the first part mailed to Van Buren Ind. will be good and sufficient payment for any money falling due on this grant. First party has right to locate roads to and from places of operations. No well shall be drilled nearer to buildings than three hundred feet, unless by agreement and with an understanding between the parties hereto. Second party to erect and maintain gates and keep same closed. Shackel lines shall be high enough for train to pass under. Second well shall be completed ninety days after first well and a well each ninety days thereafter until seven wells are in, then rental to cease.

"The second party shall have the right to use sufficient gas, oil and water to run all machinery for operating said wells, also the right to remove all its property at any time, and may cancel and annul this contract or any part thereof at any time.

"It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, successors and assigns."

The bill alleges compliance by the appellant with the stipulations of the instrument; the payment by it of $8.75 per month in advance; that the tender of $8.75 on October 19, 1901, was refused by the Bradfords, who, ignoring the rights of the appellant, placed the Western Oil Company, appellee, in possession, which company, with knowledge of the rights of the appellant, had placed machinery upon the land, had made excavations, and were drilling thereon for oil and gas; that subsequently thereto, and on November 14, 1901, the appellant moved material upon the land for the purpose of erecting a rig thereon to be used in drilling for oil and natural gas, which material was removed by the Western Oil Company, with the knowledge and approval of the Bradfords, and cast upon the highway. The bill alleges that the acts complained of constitute a lien and cloud upon the leasehold title of the appellant, removable only in equity, that it has no adequate remedy at law, and prays an injunction suitably restraining the appellees, and a decree to establish the title of the appellant, and to subordinate all rights of the appellees to the title of the appellant. A demurrer to the bill was sustained by the court below (Federal Oil Company v. Western Oil Company [C. C.] 112 Fed. 373), and on January 11, 1902, a decree passed dismissing the bill for want of equity, which decree is brought here for review.

E. H. Adams, for appellant.
Frank E. Gavin and D. J. Cable, for appellees.

Before JENKINS and GROSSCUP, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above). The nature of property in natural gas and oil contained in the earth, and the legal effect of the instrument here in question, have been settled authoritatively by the rulings of the Supreme Court of Indiana (State v. Indiana & Ohio Oil, Gas & Min. Co., 120 Ind. 575, 22 N. E. 778, 6 L. R. A. 579; People's Gas Company v. Tyner, 131 Ind. 277, 31 N. E. 59, 16 L. R. A. 443, 31 Am. St. Rep. 433; Heal v. Niagara Oil Company, 150 Ind. 483, 50 N. E. 482; Manufacturers' Gas Company v. Indiana Gas Company, 155 Ind. 461, 57 N. E. 912, 50 L. R. A. 768), and by the Supreme Court of the United States in Ohio Coal Company v. Indiana, 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729. In the last case the nature of the property right is

thus clearly stated by Mr. Justice White (page 208, 177 U. S., page 583, 20 Sup. Ct., and 44 L. Ed. 729):

"It is apparent that the cases in question [referring to the Indiana cases cited], in accord with the rule of general law, settle the rule of property in the state of Indiana to be as follows: Although, in virtue of his proprietorship, the owner of the surface may bore wells for the purpose of extracting natural gas and oil, until these substances are actually reduced by him to possession he has no title whatever to them as owner; that is, he has the exclusive right on his own land to seek to acquire them, but they do not become his property until the effort has resulted in dominion and control by actual possession. It is also clear from the Indiana cases cited that, in the absence of regulation by law, every owner of the surface within a gas field may prosecute his efforts, and may reduce to possession all or every part, if possible, of the deposits, without violating the rights of the other surface owners."

The legal effect of the instrument here in question is therefore the grant of a mere use for the purpose of prospecting. The title is inchoate, and for purposes of exploration only until oil or gas is found.

If not found, no estate vests in the lessee, and his title, whatever it is, ends with the abandonment of the unsuccessful search. If found, the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract. Heal v. Niagara Oil Company, 150 Ind. 483, 50 N. E. 482; Venture Oil Company v. Fretts, 152 Pa. 451, 25 Atl. 732.

The question then arises whether the specific performance of this contract should be enforced in equity. The principles by which courts of equity are guided in respect to the subject are well established. The right to specific performance is not absolute, but rests in judicial discretion—not an arbitrary, capricious discretion, but sound judicial discretion, controlled by established principles of equity, and exercised upon the consideration of all the circumstances of each particular case. The contract must possess certain elements, to demand of equity the exercise of its jurisdiction to enforce performance. It must be upon a valuable consideration. It must be mutual in its obligations and in its remedy. It must be perfectly fair, equal, and just in its terms and in its circumstances, and the situation must be such that the remedy of specific performance will not be harsh or oppressive. The contract must be such that the court is able to make an efficient decree for its specific performance, and to enforce the decree when made. Pomeroy's Eq. § 1405.

With respect to the agreement in question, there are two considerations which go far to impeach its fairness:

First, its want of mutuality. No obligation is assumed by the appellant to do anything—either to drill or to pay. It is in fact a mere option. It is undoubtedly true, as urged by the appellant, with respect to enterprises of this character, that a company proposing to obtain natural gas or oil in large quantities for sale or manufacturing purposes finds it desirable to acquire exclusive right to search for the fugitive mineral in a large area or areas; and, though it be not necessary for the proper development of the particular area to drill

a well upon the land of all the several proprietors within the district, it is desirable and profitable to have no competing wells on the terri-tory near to wells deemed sufficient for the development of the terri-tory. That, however, was not the purpose of this contract. It con-templated immediate exploration upon the particular land. A well was to be commenced within one day from its date, and postpone-ment of operation was to be compensated for at the rate of $8.75 for each month that such commencement was delayed. Bradford was to have one-eighth part of the oil produced, and, if gas only should be found, $100 annually for the product of each well, and to have gas free of cost for heating and lighting purposes in his dwelling. It was not contemplated, as we read this instrument, that the appellant could indefinitely postpone the commencement of operations upon the payment of $8.75 per month. That would only compensate during the delay for the gas which Bradford would receive if gas only should be found, and he would receive no compensation for oil if oil should be found by drilling upon other land within the oil district. The appellant had the right at any time to remove its property and cease' operations without respect to the interests of Bradford, and with respect only to its own interest; and it could cancel and annul the contract, or any part thereof, at any time. There was here an entire want of mutuality—an utter absence of obligation on the part of the appellant. Equity will not specifically enforce a contract against one party when it cannot be specifically enforced against the other. Marble Company v. Ripley, 10 Wall. 339, 359, 19 L. Ed. 955; Kar-rick v. Hannaman, 168 U. S. 328, 336, 18 Sup. Ct. 135, 42 L. Ed. 484. Not only could this contract be not enforced against the ap-pellant, for want of obligation assumed, but it does not offer by its bill to do that which it was the obvious intent of the contract it should do, but which it had not obligated itself to do, namely, to drill for oil and gas. Tender of performance is absolutely necessary, espe-cially in cases of optional contracts. Kelsey v. Crowther, 162 U. S. 404, 16 Sup. Ct. 808, 40 L. Ed. 1017; Richards v. Green, 23 N. J. Eq. 536. The only effect of a decree would be to drive the ap-pellees out of possession and put the appellant in possession; allow-ing it to hold the land indefinitely without action upon its part, and to exploit adjacent lands for natural gas, and oil, if it had acquired the right so to do, and thus to defeat any participation by Bradford in the oil which may be beneath the surface of his land. It is no an-swer to say that the appellant could only do this upon monthly pay-ments to Bradford of $8.75, for that would not compensate him for his share of the oil which it was hoped would be developed, and would permit the appellant if it had obtained like rights upon ad-joining lands, and should, by drilling thereon, develop the presence of oil, to obtain the oil beneath the surface of Bradford's land with-out any participation therein by him. Nor does the fact that the monthly payments had been made for some months after the contract remove from this agreement the want of mutuality. That payment was not part performance of the contract, but merely the stipulated sum for delay in performance. Contracts unperformed, optional as to one party, are optional as to both. The contract here was deter-

mined by the act of Bradford refusing to receive the stipulated sum for further delay, and by placing the Western Oil Company in possession. Knight v. Indiana Coal & Iron Company, 47 Ind. 105, 17 Am. Rep. 692; Huggins v. Daley, 40 C. C. A. 12, 99 Fed. 606, 48 L. R. A. 320; Reese v. Zinn (C. C.) 103 Fed. 97.

Secondly, this agreement, upon its face, is without limit of time. There is no period within which the thing sought to be accomplished must be commenced, or the contract should cease. It is terminable at the will of the appellant. Certainly the contract is most unfair, and it would be unconscionable for a court of equity to place the appellant in a position to forever deprive the owner of the soil of the right to use his land, or to drill for such treasures as the earth may contain. Munroe v. Armstrong, 96 Pa. 307.

The decree is affirmed.