SUPERIOR OIL & GAS CO. v. MEHLIN.

No. 436.   Opinion Filed March 8, 1910.

(108 Pac. 545.)

1.   SPECIFIC PERFORMANCE—Contracts Enforceable. Specific performance will not lie, unless the agreement is certain, fair, and just in all its parts; and in such an action any element showing that the contract is unfair, unjust and against good conscience will justify the court in refusing such decree, although the contract, had it been executed, might offer no sufficient ground for cancellation.

2.   SAME—Executory Contract Optional with Party. An executory contract, which under its terms leaves it optional with one party whether or not he will proceed with the contemplated enterprise, makes the same likewise optional with the other, and specific performance will not be decreed.

3.   MINES AND MINERALS—Oil and Gas Leases—Construction Favoring Lessor. A different rule of construction obtains as to oil and gas leases from that applied to ordinary leases or to other mining leases; and, owing to the peculiar nature of the mineral, and the danger of loss to the owner from drainage by surrounding wells, such leases are construed most strongly against the lessee and in favor of the lessor.

4.   SPECIFIC PERFORMANCE—Contracts Enforceable—Oil and Gas Lease. Defendant, an intermarried citizen, allottee, of the Cherokee Nation, June 24, 1904, executed a contract with plaintiff in which he agreed to make an oil and gas lease on his allotment in accordance with the terms and conditions required by the Secretary of the Interior, or if they be not required, a regular oil and gas lease such as was used in the state of Kansas. Action brought for specific performance, in which the lease agreed on and sought to be enforced was shown to contain

a proviso allowing plaintiff 15 years from its execution within which to begin operations, and, for an unspecified consideration, license to extend such term indefinitely; decree by the court denied. Held not error.

5.    EQUITY—Nature of Relief. The relief granted in equity is such as the nature of the case, the law and the facts, demand, not at the beginning, but at the time the decree is entered in the litigation.

6.    SPECIFIC PERFORMANCE—Denial of Equitable Relief—Right to Compensation. In a case where specific performance requiring execution of a contract is not decreed by reason of a want of equity growing out of the peculiar character of the contract involved, it is the duty of the court to retain jurisdiction of the action, and to decree compensation to the plaintiff to the extent of the money by him paid, and interest thereon, and also for all beneficial and lasting improvements which in carrying out the terms of the alleged contract he may have in good faith made upon the premises.

7.    SAME. Where, in an action for specific performance of a lease, the same is found to be of a class which will not support a decree, but there is no fraud, and plaintiff has paid a money consideration thereon, and has in good faith entered under the same and made valuable and lasting improvements, a court in denying specific performance will grand plaintiff an opportunity to establish his right to compensation from defendant, and decree the same a lien upon the premises involved.

(Syllabus by the Court.)

*Error from District Court, Nowata County; T. L. Brown, Judge.*

Action by the Superior Oil & Gas Company against James G. Mehlin. Judgment for defendant, and plaintiff brings error. Remanded, with instructions.

*Eugene B. Lawson,* for plaintiff in error.

*W. H. Kornegay,* for defendant in error.

DUNN, C. J.    November 6, 1906, the Superior Oil & Gas Company filed its complaint in equity against James G. Mehlin in the United States Court for the Northern District of the Indian Territory, sitting at Nowata, for the purpose of securing the reformation of a certain contract and its specific performance. The lower court denied plaintiff's prayer, and the cause has been brought to this court for review. For a correct understanding of the matters placed at issue and necessary for determination, we will set forth the material averments of the complaint and the answer.

In its amended complaint the plaintiff avers that on the 24th day of June, 1904, the defendant was a citizen of the United States, a white man not of Indian blood, and an adopted citizen of Cherokee Nation. That having full and complete power and authority in the premises, he entered into the following written agreement:

"This agreement made and entered into this the 21st day of May, A. D. 1904, by and between James G. Mehlin, party of the first part, and Superior Oil & Gas Co., a corporation, duly organized and existing under the law of Arkansas, applicable to the Indian Territory, party of the second part, witnesseth: That whereas the said James G. Mehlin has filed as a duly enrolled citizen of the Cherokee Nation on the following lands: The NE/4 of SE/4 sec. 19; and the W/2 of the NW/4 of the SW/4 of sec 20; and S/4 of the SE/4 of sec. 19. And whereas the legal rights of said Mehlin to receive the allotment of said land is not settled; it is mutually agreed as follows: That as soon as the rights of the said Mehlin are settled in his favor, he will at once make an oil and gas lease to the party of the second part, in accordance with the terms and conditions required by the Secretary of the Interior or if they be not required, a regular oil and gas lease such as is used in the state of Kansas. In the event, however, that within a reasonable time from date hereof the case has not been settled, or the party of the second part may desire to drill for oil, said Mehlin agrees to provide for filing of some one else on the land who will execute said lease."

That under and by virtue of the terms of said contract the defendant agreed with plaintiff that he would execute to plaintiff an oil and gas lease on the lands selected in allotment by him, whenever his rights as a citizen of the Cherokee Nation were fully and finally established. That at the time of entering into the said contract there was a mutual mistake made by plaintiff and defendants in describing the said lands in said contract, in this, to wit: (Herein is set out the alleged error, with a description of the lands intended to be included.) That the rights of defendant as a citizen of the Cherokee Nation were finally decided in his favor by the Supreme Court of the United States on the 5th day of November, A. D. 1906, and at any time thereafter the defendant

could have made a good and valid lease to plaintiff in accordance with the terms and conditions of the contract entered into on the 24th day of June, 1904. That in accordance with the terms and conditions of the said contract, plaintiff, after the rights of defendant had been settled in his favor by a decision of the Supreme Court of the United States, caused to be presented to defendant for his signature a regular oil and gas mining lease on commercial forms, such as is used in the state of Kansas, and which form was agreed to by the parties when the contract was entered into, covering that portion of defendant's allotment known as his surplus lands, which lease defendant refused to sign, copy of said lease being hereto attached, and marked "Exhibit B," and made a part hereof. Plaintiff states that said lease was drawn in conformity to the contract entered into between plaintiff and defendant on the 24th day of June, 1904, and that no objections of any kind whatsoever were made by defendant to the form of leases presented to him for his signature, or to the terms and conditions of the same.

Attached to plaintiff's amended complaint and made a part thereof are forms of all leases provided for in the contract. The plaintiff further pleads that the consideration for the making of the lease was $600 in stock in the plaintiff corporation, which it avers it delivered to, and that the same was received by, the defendant; also, $300 in cash, being the amount of money expended by defendant in the digging of a well on the premises, and that as a further consideration defendant was to receive 10 per cent. of the product produced under the lease.

The answer of defendant virtually admitted every averment of plaintiff's complaint, either by direct admission or by failure to controvert. Section 3277, St. Ind. T. (Mansf. Dig. § 5072); 2 Ency. L. & P. p. 175. The only material elements of fact which it denied was the averment of the payment of the consideration mentioned therein, the other questions raised by the answer being almost altogether of law; there being contained therein such general averments as that the instrument created no obligation on

the part of defendant to make an oil and gas lease, for the reason
that there was no consideration for the same moving from plaintiff
to defendant, and that there was no obligation provided for therein
on the part of plaintiff to do anything for the benefit of the de-
fendant. That under said demand it is wholly optional with the
plaintiff to work the land for oil and gas, and that the instrument
is too indefinite to create any obligation. That the same is against
public policy, and that at this time it would be unjust and inequit-
able for the court to reform said instrument and to require said
defendant to make a lease to the plaintiff; that the prevailing rate
of royalty in the community at the present time far exceeds 10 per
cent of the product mined, and that the contract sought to be en-
forced was not sufficient under the statute of frauds.

The actual issues made by the pleading were in a great measure
ignored and abandoned by the parties on the trial, and evidence
covering the entire subject-matter of the controversy, without ref-
erence to whether the same was put in issue or not, was generally
without objection offered, heard, and by the master and court ad-
judicated. The consideration as averred in the complaint was es-
tablished by proof, and so found by the court, except possibly the
final consideration as shown by the evidence in reference to the
stock in the plaintiff company. The term of the lease, which is
neither pleaded in the complaint nor shown by the exhibit, was
fixed under the evidence, and found by the court, at 15 years. Evi-
dence likewise showed that the defendant had, prior to the trial
of the cause, entered into a lease with another concern, and that
the prevailing rate of royalty and compensation for oil and gas
leases was 8 per cent. of the product, and over $200 bonus per acre.
The plaintiff, it seems, had by and through the assistance of the
defendant secured a large number of leases of the defendant's rela-
tives, and others in the immediate vicinity of his land, and on his
failure and refusal, on the determination of his rights in and to his
allotment, to consummate the proposed agreement to execute a
lease this suit was brought to compel it.

Defendant testified that he intended by his contract to cover

his entire allotment, and if this were all that was involved in the action, there could be no doubt that a decree for a reformation would follow as a matter of course; but, as reformation is sought solely for the purpose of securing specific performance in the execution of the lease provided for therein, the contract will not be reformed, unless the remedy of specific performance can likewise be awarded. Under these circumstances we turn to the record to ascertain whether or not specific performance of the lease contracted for will be decreed. The provisions of the contract in reference to the lease is that the same will be made in accordance with the terms and conditions required by the Secretary of the Interior, or, if they be not required, a regular oil and gas lease such as is used in the state of Kansas, and the lease to be thus made was to be executed as soon as the rights of Mehlin to his land were settled in his favor. The construction which the parties placed upon this particular portion of the contract was shown in the evidence by testimony that it was the intention to have a regular oil and gas lease such as was used in the state of Kansas, rather than one under the terms required by the Secretary of the Interior. It was asserted that it was intended to have a commercial lease instead of being bound up by rules and regulations of the Interior Department, if possible. The condition thus referred to necessarily contemplated the exercise of Mehlin's rights as they existed at the time he was called on to act; that is, if his rights were such at the time of making the lease that the law would require the sanction of the Secretary of the Interior to validate any lease made, then it was to conform thereto. On the other hand, if a commercial lease should at that time be valid, this was the kind agreed on. It is virtually conceded by counsel that at the time of the execution of this contract any valid lease made by the defendant on his homestead would require the approval of the Secretary of the Interior (see section 72, Cherokee Agreement [Act July 1, 1902, c. 1375, 32 Stat. 726]; section 131, Bledsoe's Indian Land Laws; and Act April 21, 1904, c. 1402, 33 Stat. 189), while under Act May 27, 1908, c. 199, 35 Stat. 312 (Bledsoe's Indian Land Laws, § 600), any and all restrictions upon the leasing by the defendant of his entire allotment were removed,

and he would at this time be able to make a lease on his home-
stead, as well as his surplus, without the approval of the Secretary
of the Interior. While a judgment in a court of law always relates
to the condition of facts as they exist at the commencement of the
action, such is not the rule in equity, as here the relief adminis-
tered is such as the nature of the case and the facts justify at the
close of the litigation. 16 Cyc. 479; *Pennsylvania Co. v. Bond,* 99
Ill. App. 535; *Peck v. Goodberlett,* 109 N. Y. 180, 16 N. E. 350.
This consideration is essential, for the reason that to the com-
plaint are attached as exhibits two forms of leases; one such as the
pleader assumed and averred contained terms such as would be ap-
proved by the Secretary of the Interior, and the other a regular
oil and gas lease such as is used in the state of Kansas. The re-
moval of all restrictions on defendant and his allotment, and the
agreement of the parties as manifested by the contract, the plead-
ings, and the evidence, leaves, then, for our consideration solely
the latter lease, the execution of which we are asked to specifically
decree and enforce.

Mr. Pomeroy in his work on Equity Jurisprudence, at section
1405, says in substance that a contract to be subject to specific per-
formance must be reasonably certain as to its subject-matter, its
stipulations, its purposes, its parties, and the circumstancs under
which it is made. It must be, in general, mutual in its obligations
and in its remedy, perfectly fair, equal, and just in its terms and
its circumstances, and be such that the remedy of specific per-
formance will not be harsh or oppressive. A rule of unexceptional
application is that specific performance will not be awarded unless
the contract is certain, fair, and just in all its parts and any fact
showing that the contract is unfair, unjust, and against good con-
science will justify the court in refusing such decree, although the
same, if duly executed, would present no sufficient ground for can-
cellation, or would be enforceable at law. *Dalzell et al. v. Dueber
Watch Case Mfg. Co.,* 149 U. S. 315, 13 Sup. Ct. 886, 37 L. Ed.
749; *Federal Oil Co. v. Western Oil Co. et al.* (C. C.) 112 Fed.
373. A form of a regular oil and gas lease such as was used in
the state of Kansas was appended as an exhibit to the complaint,

and the terms thereof material to be here considered, relating to the time for which it was to run and the conditions under which plaintiff could be required and compelled to operate under it, are in three paragraphs, which are as follows:

"That the party of the first part, for and in consideration of one dollar ($1.00) cash in hand paid, and the royalties, covenants, stipulations and conditions hereinafter contained, and hereby agreed to be paid, observed and performed by the party of the second part, its successors and assigns, does hereby grant, demise, lease and let unto the said party of the second part, its heirs, successors and assigns, for the term of fifteen years from the date hereof, and as long thereafter as oil or natural gas, or either of same is produced from said land by the said party of the second part, all the oil deposits and natural gas in and under the following described tract of land, lying and being within the Cherokee Nation, * * * " etc.

"The said party of the second part further covenants that it will commence operations upon the above described land within the term aforesaid, and to operate the same in good and workmanlike manner; to commit no unnecessary waste upon said land in its occupancy or use; to take good care of the same and to promptly surrender and return the premises upon the termination of this lease to the party of the first part or to whomsoever shall be lawfully entitled thereto, * * * " etc.

"It is also hereby stipulated that, in case operations as aforesaid are not commenced within the term aforesaid, the said party of the second part shall pay to the said party of the first part the sum of $———, in advance, for each additional year such commencement is delayed from the end of the term aforesaid until a well is completed, * * * " etc.

From the foregoing it will be noted that the lessee under the terms of the lease could delay the beginning of any well upon the land described for practically 15 years, and then if at the end of that period of time he desired to delay longer, there was a proviso allowing it (for a consideration not specifically named) to hold the land indefinitely, without beginning any operations whatsoever. Thus, while by a decree defendant might be compelled to enter into this lease, no court could under its terms exercise any power to compel the lessee to operate. Under its terms it is left entirely to

the action of the lessee to either drill for oil or gas, or not drill, and there is no forfeiture or burden provided for during this 15-year term, in which the lessee may deprive the owner of any of the benefits whatsoever of having his land exploited. The general rule in such cases is that contracts unperformed, optional as to one of the parties, are optional as to both. *Venture Oil Co. v. Fretts,* 152 Pa. 451, 25 Atl. 732; *Huggins et al. v. Daley,* 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320; *Reese et al. v. Zinn et al.* (C. C.) 103 Fed. 97; *Federal Oil Co. v. Western Oil Co.,* 121 Fed. 674, 57 C. C. A. 428.

The favorable presumptions which are usually indulged in behalf of ordinary lessees are not enjoyed by those holding leases of the character whose enforced execution is sought by plaintiff in this action, for the doctrine seems to be fundamental that, on account of the peculiar nature of the subject-matter upon which they operate, and the danger of loss to the lessor through the movement of the oil and gas to surrounding lands, and its withdrawal from neighboring wells, oil and gas leases are construed most strongly against the lessee and in favor of the lessor. Costigan on Mining Law, § 127, p. 475; Bryan on Petroleum, § 146; 6 Pomeroy, Eq. Juris. § 787; Donahue on Petroleum and Gas, p. 149; Thornton on the Law Relating to Oil and Gas, § 78; 2 Snyder on Mines, § 1181; *Southern Railway Co. v. Franklin & Pittsylvania Railway Co.,* 96 Va. 706, 33 S. E. 485, 44 L. R. A. 297; *Huggins et al. v. Daley, supra; Venture Oil Co. v. Fretts, supra; Berry v. Frisbie et al.,* 120 Ky. 337, 86 S. W. 558; *Kelley v. Ohio Oil Co.,* 57 Ohio St. 317, 49 N. E. 399, 39 L. R. A. 765, 63 Am. St. Rep. 721; *Munroe v. Armstrong et al.,* 96 Pa. 307.

The Circuit Court of Appeals of the Fourth Circuit, in the case of *Huggins et al. v. Daley, supra,* says:

"There is perhaps, no other business in which prompt performance is so essential to the rights of the parties, or delays so likely to prove injurious—no other class of contracts in which time is so much of the essence. There is no other branch of mining where greater damage is done by delay. Coal and precious

metals lie either in hortizontal veins or in pockets. They remain where they are until removed. Oil and gas are the most uncertain, fluctuating, volatile, and fugitive of all mining properties. They lie far below the surface, beyond the control of human will, and beyond the reach of any legal process, whence they may flow unrestrained if the owner of adjoining land bores a well down to the strata which hold them; and there is no law which can provide adequate, or indeed any, compensation for such results. This is a matter of common knowledge, and 'courts will generally take notice of whatever ought to be generally known within the limits of their jurisdiction.' * * * In *Oil Co. v. Marbury*, 91 U. S. 593, 23 L. Ed. 328, the facts were, to some great extent, the converse of those here; but Mr. Justice Miller comments on the fluctuating character and value of this class of property, and asserts the injustice 'of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit,' and, referring to the distinction between real estate whose value is fixed, says: 'The class of property here considered is subject to the most rapid, frequent, and violent fluctuations in value of anything known as property, and requires prompt action in all who hold an option whether they will share its risks or stand clear of them (and that), no delay, for the purpose of enabling the defrauded party to speculate upon the chances which the future may give him of deciding profitably for himself whether he will abide by his bargain or rescind it, is allowed in a court of equity.'"

Bryan on Petroleum, at page 146, speaking on the question of the light in which these leases are viewed by the courts, especially where they present elements of unfairness, whereby under their strict terms a lessee may await at lessor's risk the event of oil or gas discovery, says:

"The trend of decisions touching questions of forfeiture arising out of oil and gas leases has been almost uniformly in favor of the lessor. Generally it is the lessee who is favored, and, after a substantial compliance by him with the terms of the contract, equity will not regard a technical breach. But, with mining leases, it is otherwise. This is due principally, if not entirely, to the nature of the business of mining, and more specifically oil mining; to the temptation offered the shrewd operator to purchase at a nomi-

nal price the right of developing the lands, the owner of which is ignorant of their real value for any purpose, and then to hold them indefinitely should it suit his purpose, neither working them himself nor permitting another to do so. * * * But the lessee, where the instrument presents a semblance of inequalities or unfairness, will find that he has a thorny road to travel before reaching a judicial establishment of his claims."

And to the same point the Supreme Court of Pennsylvania, in the case of *Munroe v. Armstrong et al., supra*, said:

"In the rapid development and exhaustion of oil lands, cessation of work for nine months is a long period. Often, in far less time, the fluctuations in prices of lands and leaseholds is very great. Perhaps in no other business is prompt performance of contracts so essential to the rights of the parties, or delay by one party so likely to prove injurious to the other."

The lease contract here sought to be enforced presents terms which preclude its favorable consideration at our hands. The principles enunciated in the foregoing authorities to our minds are conclusive of plaintiff's rights. Under this lease defendant would be required to turn his land over to plaintiff, so far as oil and gas exploitation was concerned, and defendant could be deprived of this valuable property right forever.

"Certainly the contract is most unfair, and it would be unconscionable for a court of equity to place the appellant in a position to forever deprive the owner of the soil of the right to use his land, or to drill for such treasures as the earth may contain. *Munroe v. Armstrong*, 96 Pa. 307." (*Federal Oil Co. v. Western Oil Co.*, 121 Fed. 674, 57 C. C. A. 428.)

Notwithstanding the fact, however, that we are unable to grant to plaintiff the primary relief for which it prays, there is no fraud shown, and there are manifest equities in its behalf which we cannot pass without noticing. Plaintiff had paid defendant money in an effort on its part to carry out the terms of the contract as it assumed them to be, and defendant has received and retained this money, and apparently has made no offer of return. In addition thereto plaintiff, with the consent of defendant, entered upon his allotment, and erected a house on the same for a residence

or office building; the exact cost of the same being uncertain. Plaintiff's petition contains a prayer for general relief, and in such cases the trend of authorities is that, where the equitable relief specifically prayed for cannot be given, the plaintiffs action will not be dismissed, but in some proper manner he will be given an opportunity to obtain relief to the extent to which he is shown a right. 16 Ency. Plead. & Prac. p. 801; *Seibert et al. v. Thompson et al.*, 8 Kan. 65; *Martin et al. v. Martin*, 44 Kan. 295, 24 Pac. 418. And numerous authorities support the rule that, when specific performance cannot be decreed, compensation will be allowed to the extent of the purchase money actually paid upon the alleged contract, and where in such case facts are shown entitling plaintiff to have a lien declared upon the premises for reimbursement, the court may retain the case for the purpose of affording such relief, and compensation may be awarded for improvements made in good faith. 20 Ency. P. & P., pp. 494, 495. The rule thus laid down finds support in many authorities: 26 Am. & Eng. Ency. of Law, p. 85; *Johnston v. Glancy et al.*, 4 Blackf. [Ind.] 94, 28 Am. Dec. 45; *Hug, Adm'x, v. Van Burkleo*, 58 Mo. 202; *Devore v. Devore*, 138 Mo. 181, 39 S. W. 68; Fry on Specific Performance of Contracts (3d Ed.) secs. 1276-1279, and at section 1454 it is said that:

"The lien is not strictly confined to a case of simple purchase; it extends to a case of a lease, and entitles an intended lessee who has entered under the contract and expended money to a lien on the lessor's interest."

Under the judgment of the court plaintiff's complaint would be dismissed. On this account we believe a new trial should be ordered.

In the consideration of a similar proposition the Court of Appeals of the state of New York, in the case of *Sternberger et al. v. McGovern*, 56 N. Y. 12, said:

"The remaining question is whether the General Term ought not to have ordered a new trial instead of giving final judgment dismissing the complaint. It appears from the opinions that the latter course was adopted for the reason that it appeared, upon

the trial, that the plaintiffs were aware, at the time of the commencement of the action, that the defendant could not perform the contract, and that in such a case equity would not retain the suit for the purpose of awarding damages which could be recovered the tariff rate duly established and published by defendant for the Code. *Morss 'v. Elmendorf,* 11 Paige [N. Y.] 277. But the Code authorizes the uniting of causes of action, both legal and equitable, arising out of the same transaction in the complaint. *Bradley v. Aldrich,* 40 N. Y. 504, 512 [100 Am. Dec. 528]. The facts constituting these causes of action must be stated in the complaint. The court held in that case that no facts constituting a legal cause of action were stated in the complaint, and that, as the plaintiff failed to prove the equitable cause of action stated, the complaint was properly dismissed. This shows that, when the complaint states facts giving an equitable cause of action and also a legal cause of action, arising out of the same transaction, the party is entitled to have both tried, if necessary to obtain his rights, * * * True, the mode of trial may be different. The former must be tried by the court or a referee, unless some question or questions of fact involved are ordered by the court to be tried by jury. Either party has the right to a jury trial of the latter. This creates no practical difficulty.. The one issue may be tried by the court and the other by jury if the ends of justice require the trial of both, or both may be tried by the court or a referee if the parties so desire."

There is no evidence offered, and no fact asserted, testified to, or found, upon which a conclusion of active bad faith would be justified. The money paid defendant, the improvement of his property by the construction of a house thereon, both of which were incident to and referable solely to the assumed contractual relation between the parties, were made under such circumstancs that this complaint, on the denial of specific performance, ought not to be dismissed, but should be by the court retained for the adjustment of the remainng differences between the parties. It is no good reason to our minds why plaintiff should be driven out of court, and compelled to institute a new proceeding to have its manifest rights adjusted, because it asked for relief to which the facts showed it was not entitled.

The cause is therefore remanded to the district court of No-

wata county with instructions to set aside the order denying plaintiff's motion for a new trial and take evidence upon plaintiff's claim for compensation and damages against the defendant, making any judgment, should one be obtained, a lien on the land involved. Should the pleadings herein be insufficient, amendments should be allowed, and issues framed, with the costs of the litigation abiding and following the judgment.

All the Justices concur.