**WARNER v. PAGE.**

No. 6999—Opinion Filed June 27, 1916.

(159 Pac. 264.)

**1. Specific Performance — Options — Mining Lease.**

Where a lease for oil and gas provides, among other things, that the lessee shall begin operations within six months, and, upon failure to do so, shall pay annually $500 into a certain bank, or to the lessor direct, and that failure to commence operations or to pay shall render the lease null and void, held that such lease was a mere option, preventing the lessor, after receiving the delay money, from leasing to another for the period of one year from the date of such payment, and that such contract, being an option on the part of the lessee to terminate the lease at any time, deprived such lessee of the right of specific performance, at least until he had performed the contract or placed himself in such position that he might be compelled to perform.

**2. Contracts—Construction—Options.**

When contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound.

**3. Contracts—Performance—Payment—Sufficiency—Unsigned Check.**

Where a contract provides for the deposit of delay money in a certain bank, sending to such bank an unsigned check before the due date of such delay money, or sending to the lessor or owner of the lease several days after delay money was due a check payable to the owner, is not such compliance with the contract as to require the lessor to accept such check.

**4. Same—Waiver of Performance.**

Where a contract provides that delay money shall be deposited in a certain bank or paid to the lessor, and an unsigned check is sent to said bank and returned to the lessee by such bank with directions to make it payable to the owner of the land and properly sign the same, and such direction is given several days before the due date of the delay money for extending option, and the lessee sends a check to such bank properly signed and payable to the owner of the land, held, the owner of the land is not estopped upon his refusal to accept such check from declaring the lease at an end, especially where the lessee has pleaded performance of the contract and has not pleaded waiver or estoppel.

(Syllabus by Clay, C.)

Error from District Court, Tulsa County; L. M. Poe, Judge.

Action by Charles Page against E. S. Warner and Al Brown. Judgment for plaintiff, and defendant Warner brings error. Reversed and remanded.

Charles F. Runyan, for plaintiff in error.

Poe, Hindman & Lundy, for defendant in error.

Opinion by CLAY, C. For convenience the parties herein will be referred to as they appeared in the trial court, plaintiff and defendant, respectively. This was an action brought by Charles Page, plaintiff, against E. S. Warner and Al Brown in the superior court of Tulsa county, Okla., on the 28th day of August, 1913, and finally transferred to the district court of Tulsa county, where it was finally determined.

Plaintiff in his petition alleges that defendant was the owner in fee of a certain tract of land in said county consisting of 35.27 acres; that on July 22, 1912, W. D. Elmer, the then owner, leased said premises to him for a period of 15 years, which lease was duly recorded, by virtue of which, prior to this action, he went into peaceable possession; that plaintiff had fully performed all the conditions in the lease contract and on the 19th day of July, 1913, had paid the $500 commutation money provided for by said lease, and prior to any notice of change in ownership; that said money was accepted in lieu of drilling operations; that on the 20th day of July, 1913, said Warner sent him written notice de-

claring said lease null and void and that plaintiff had not received any notice of change of ownership as provided for in the lease, and tendered into court the $500 commutation money; that one Al Brown subsequently took possession of said land for the purpose of developing the same for oil and gas under a lease from the said Warner; that said lands were underlaid with oil and gas. and defendants are about to remove the same; that plaintiff has no plain, speedy, and adequate remedy at law, and asks that defendant be restrained. Upon this verified petition and certain affidavits, the superior court granted a temporary restraining order.

The defendant, Al Brown, disclaimed any interest; defendant Warner admitted the execution of the lease set up in plaintiff's petition between plaintiff and W. D. Elmer; that Elmer had conveyed to Warner the lands, and denied that plaintiff had performed the conditions of the lease, denied the payment of the rentals due July 22, 1913, or that the same had been credited to the account of said W. D. Elmer for delay of drilling operations, alleging that on the 24th day of July he sent a written notice declaring the lease null and void; alleging that Brown went upon the lands in August, 1913, and held a leasehold interest in the same from defendant; alleging that plaintiff had full notice of the change of ownership of the premises prior to July 22, 1913; that by reason of the failure to perform the conditions of the lease by the plaintiff, and the failure to pay commutation money as provided for by the lease on July 22, 1913, the same became null and void. Defendant further prayed for dissolution of the temporary order and that plaintiff's lease be canceled. Upon trial judgment was rendered for the plaintiff, and, from an order overruling a motion for a new trial, the case is brought here for review.

The evidence in this case shows that the plaintiff, on July 22, 1912, entered into a lease contract with W. D. Elmer, the then owner of the lands, to explore said lands for oil and gas, which lease was to run for 15 years, or as much longer as oil and gas were found in paying quantities. The conditions of said lease material to this inquiry are as follows:

"First. The party of the second part agrees to commence operations on said premises within six months from this date, and thereafter pay first party an annual rental of $500 in advance for further delay until operations are commenced; said rental to be deposited to the credit of the party of the first part in the Muskogee National Bank of Muskogee, Okla., or to be paid direct to said first party; and a failure to commence said operations, or to pay said rentals, shall render this lease null and void, and neither party herein shall be held to any accrued liability or to any damages, or be held liable upon any stipulations herein contained; second party agrees to complete two wells within one year, provided the first one is a producer, along the bank of the river."

"Eleventh. It is further agreed that in the event the party of the first part, his heirs, administrators, or assigns, shall sell the lands, or the royalty or rental interest under this lease, or the party of the first part shall die, the party of the second part, as aforesaid, shall continue to pay the said rentals or royalties by deposit to the credit of the said party of the first part as aforesaid, until notified in writing by the party so purchasing or inheriting said lands. * * *"

Defendants at the time of the bringing of the action for injunction were in possession of the land and had drilled a well to the approximate depth of 750 feet. Prior to July 22, 1913, plaintiff had made no attempt to drill upon said land and made no attempt until the last week of July of said year. On the 22d day of July, 1913, there was due as commutation money the sum of $500, and on the 19th day of said month the plaintiff's agent mailed to the Muskogee National Bank, to be deposited to the credit of the owner of said land as commutation money, an unsigned check for $500; and immediately upon receipt of said check on the 19th or 20th of said month the bank called defendant Warner, who directed that the check be returned and be made payable to him, as he was the owner of the land. The bank returned the check on the 23d day of said month, and on the 25th of said month plaintiff's agent returned the check properly signed to said bank and made payable to the said Warner; Warner refused to accept the check because the time for the payment of said money had expired, and directed the bank to return the check to the plaintiff and notify him of the defendant's refusal to accept it. Warner further testified that on the 25th or 26th of said month he notified plaintiff that he elected to cancel the lease for the nonpayment of the commutation money and the failure of plaintiff to comply with the terms of the lease; that plaintiff, on the said 25th or 26th day of said month, leased the said land to Al Brown; that the original consideration was $1,000, $500 cash and $500 to be paid; that he received only $500. There was some slight conflict between the assistant cashier and the defendant, and in the letter to the plaintiff returning the unsigned check the cashier, among other things, said:

"Wish to state that Mr. E. S. Warner is the owner of this land and he wishes us to have you make check payable to him. Also make proper changes in your voucher."

Defendant's first two assignments of error are that the lease was void because it

was unilateral and will not be enforced in equity, and specific performance will not be decreed, and that the lease lapsed and became null and void for failure to pay rentals. We will treat the two assignments together.

It seems to be a well-settled doctrine established by the Supreme Court of this state that an oil and gas lease passes no title, but merely the right to explore for oil and gas under the terms of the contract. In the case of Frank Oil Co. v. Belleview Co. et al., 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487, the court said:

"Oil and gas, while in the earth, unlike solid minerals, are not the subject of ownership distinct from the soil, and the grant of the oil and gas, therefore, is a grant not of the oil that is in the ground, but of such a part as the grantee may find, and passes nothing except the right to explore for the same under the terms of such contract."

See, also, Kolachny v. Galbreath, 26 Okla. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451.

The provisions in the lease, particularly paragraph 1 of the conditions above quoted, do not obligate the lessee to pay rent for delay in commencing to drill for oil and gas; they only amount to an option to lessee to explore for oil and gas and merely have the effect of preventing the landowner from leasing the premises to another during the time the commutation money has been paid for a particular period. If the lessee does not pay in advance at or before the expiration of said period, then the lease is at an end and the forfeiture may be declared by the lessor. It is so held in Deming Investment Co. v. Lanham, 36 Okla. 773, 130 Pac. 260, 44 L. R. A. (N. S.) 50. In the case of Kolachny v. Galbreath, supra, it is held by Mr. Justice Williams:

"Equity will not decree that one party perform a contract which the other party may refuse to carry out. After relief by decree granted to such party he might refuse to proceed further. A court of equity will not do a vain and useless thing by rendering a decree settling the rights of parties which one of them at will may set aside."

Plaintiff urges that this is not a suit for specific performance, but in the last above quoted case, on page 781, it is said:

"This contract is sought to be enforced negatively by a cancellation of the oil and gas lease held by Galbreath and others, defendants in error herein, and an injunction restraining them from developing this land for oil and gas and to permit plaintiff to operate under his lease. This amounts to a specific performance in equity. Fowler Utilities Co. v. Gray, 168 Ind. 1, 79 N. E. 897, 7 L. R. A. (N. S.) 726, 120 Am. St. Rep. 344."

Plaintiff contends that an option to purchase or lease may be specifically enforced upon notice of acceptance within the life of the option, and cites 36 Cyc. 625, 626, and Schnuettgen v. Frank, 213 Fed. 440, 130 C. C. A. 76. The authorities, we think, cited by plaintiff, and a number of others to the same effect, are options to purchase real estate and are distinguishable from the case at bar. This is not an option to purchase; it is merely an option to pay a certain amount of money and prevent a forfeiture of the lease. In the case of Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N. E. 53, 122 Am. St. Rep. 144, the court says:

"Cases of this character are distinguishable from a line of cases in this and other states which hold that an option contract for the sale of real estate is valid, and may be specifically enforced after the party holding such option has, within the time specified, elected to purchase and pays or tenders the purchase price. Such payment or tender supplies the element of mutuality, and neither party can thereafter recede from the contract. Such contracts have been frequently upheld and enforced in this state. * * * While the power of revocation reserved in this lease has the effect of depriving appellant of equitable remedies, in the nature of a specific performance, still the contract is not void for want of mutuality. The reservation of the right to cancel is not an infirmity which renders the contract void ab initio, but it deprives the party for whose benefit it is made, of relief in equity in the nature of a specific performance."

The plaintiff ought not to be decreed specific performance until he has performed the contract or placed himself in a position where he might be compelled to perform it. It seems to be well settled in this jurisdiction that a different rule of construction obtains with reference to the option of oil and gas leases from that of options to purchase, or ordinary leases. The reason given for this difference is the danger of loss to the owner from draining of his oil away by the wells sunk on the surrounding land, and they are usually construed most strictly against the lessee and in favor of the lessor, and especially so where, as in this case, the lessee may delay performance indefinitely. The annual payments are mere stipulations for delay in performance and the contract ought not to be enforced in equity. Federal Oil Co. v. Western Oil Co., 121 Fed. 674, 57 C. C. A. 428; Kolachny v. Galbreath et al., supra; Superior Oil & Gas Co. v. Mehlin, 25 Okla. 809, 108 Pac. 545, 138 Am. St. Rep. 942.

The evidence in this case does not warrant the finding that the money which should have been paid on the 22d of July, 1913, for delay in performance, was in fact paid. The mailing of an unsigned check to the bank three or four days before the sum was due,

and thereafter mailing a check properly signed to the same bank four or five days after the amount was due, and which check was refused by defendant, would not constitute payment under the terms of the contract, which were that "said rentals be deposited to the credit of the party of the first part at Muskogee National Bank of Muskogee, Okla.. or to be paid direct to the first party, and a failure to commence such operations, or to pay said rental, shall render this lease null and void."

We have carefully examined the evidence and do not believe that the defendant said or did anything that constituted a waiver or estoppel such as to preclude him from setting up his forfeiture of the lease. We think the case of Brown v. Wilson, 58 Okla. 392, 160 Pac. 94. is decisive of this question. where Mr. Justice Turner in the opinion used this language :

"This for the reason that, as said lessees stood on their lease in the trial court and denied a forfeiture and there prevailed upon the theory that the lease was not forfeited, if indeed it was forfeited at all, they will not be permitted to change front in this court and for the first time urge that, under the facts, they should be relieved from the forfeiture. if any occurred. Having failed there to plead in confession and avoidance in virtue of the statute invoked and there put in issue the question of whether or not they had made full compensation to the other party, as required by statute, and whether their breach of duty was or was not 'grossly negligent,' we can give them no relief here, especially in view of the fact that the rights of the second lessees have intervened and had intervened at the time of the rendition of the judgment complained of. Besides, as stated in Dill v. Fraze, 169 Ind. 53 [79 N. E. 971] : 'There is little or no reason for the interference of a court of equity to prevent a forfeiture before operations have begun, where the operator has signed away his opportunity under the contract.' "

It therefore follows that the judgment in this cause should be reversed and remanded to the trial court for such action as may be in conformity with the views herein expressed, and we so recommend.

By the Court : It is so ordered.