## BANKERS MORTGAGE CO. v. SILLS.

No. 20605.  Opinion Filed Oct. 27, 1931.

Maris & Maris, for plaintiff in error.

Wieck & Armstrong, for defendant in error.

RILEY, J.  This action was commenced by defendant in error against plaintiff in error to recover the sum of $360, alleged to have been paid as the first payment on the purchase of a $5,000 ten-year installment savings bond.  The parties will be referred to as in the trial court.

Plaintiff signed a written application for the purchase of the bond on March 21, 1927, at the solicitation of one J. S. Elem, district manager for defendant, agreeing to pay the sum of $360 upon signing the application, and further payments according to the conditions of the bond.  He delivered the application to Elem and at the same time gave his two promissory notes for $180 each, payable to the defendant 90 and 120 days, respectively, after their date.  There was no date fixed for the delivery of the bond, but on the reverse side of the application was printed the following:  "If bond is not received within 20 days from date, notify company."  The notes were indorsed: "Without recourse, the Bankers Mtg. Co., by J. S. Elem, Dist. Mgr.", and delivered to the First National Bank of Ponca City, and were paid by plaintiff at their maturity.

On October 31, 1927, no bond having been delivered to plaintiff, he wrote defendant at Wichita, Kan., calling attention thereto, and suggesting that 20 days would have been sufficient time to have delivered the bond.

On November 4th defendant wrote plaintiff:

"We are in receipt of yours of the 31st and note its contents.  According to our records, we do not find your name on our list.  This is the first information we have had, and we are writing Mr. Elem in regard to same.

"It is possible that there has been a mistake made in this office, and it is also possible that Mr. Elem was selling you a bond that belonged to someone else and not one of the company's bonds.

"Find enclosed a self-addressed stamped envelope.  Kindly write us again in two weeks if you do not hear from us in the meantime or from Mr. Elem.
> "Very truly yours
> "J. F. Kell,
> "Treasurer."

On November 5th plaintiff replied thereto as follows:

"In reply to your letter of November 4th, wish to advise that the application I made was in March through your agent, Mr. Elem, giving him two notes each in the amount of $180, payable through the First National Bank of Ponca City.  Mr. Clark, cashier of the First National Bank informs me that the money was paid to Mr. Elem on the date they were due.  I cannot understand this method of doing business between agent and company and unless a bond can be furnished me bearing date of March, 1927, as promised by Mr. Elem and as stated in my application, I will request that you return the $360 which was paid to Mr. Elem, for which I have canceled notes and checks and also your receipt.

"Trusting you will give this matter your immediate attention, I am,
> "Yours very truly,
> "Vernon V. Sills."

On November 10th defendant answered:

"I am in receipt of your favor of the 5th and I have before me your letter of the 31st, together with my reply of the 4th.

"I have written Mr. Elem in regard to this transaction but have not yet heard from him.

"I see by your letter-heads that you are in the life insurance business.  I also see from your correspondence that this transaction happened on March 22nd, and that you waited until October 31st before you wrote me.  That being the case I don't believe that a few days more or less will be very vital.

"I am inclined to believe that there was some kind of working agreement between you and Mr. Elem, but be that as it may, I am sending Mr. Elem a copy of your letter of the 5th, together with a copy of my letter to you, and asking him what it is all about, why it is and why it should be."

On November 12th plaintiff replied thereto explaining the reason for the delay in

writing the company in the first instance. November 17th defendant replied as follows:

"I am in receipt of yours of the 12th. Also in receipt of a letter from Mr. Elem, informing me that it was understood between you and he that you would buy a bond belonging to someone else, and not a company bond."

"Being that you are in the life insurance business I suspected that there was something of this kind in the wind when I got your letter.

"Mr. Elem is in and out of Ponca City, Okla. He lives at 1106 N. Monroe St., Hutchinson, Kan. There is no reason why the two of you should not adjust this matter between yourselves."

November 18th plaintiff replied thereto, stating, in part:

"I am furnished with information which leads me to believe that it would not be best to accept Mr. Elem's backing on the matter, but I am going to look to you, as his employer, to take care of the situation. You no doubt will agree with me that there is something wrong when my money has been held for a period of six months and no bond has been delivered."

November 22nd defendant answered this letter as follows:

"I am in receipt of yours of the 18th and note its contents.

"I agree with you in all that you say.

"I am sending Mr. Elem a copy of your letter, together with a copy of my reply.

"Certainly trust that the two of you will be able to get this straightened out soon."

November 23rd plaintiff replied to the above letter:

"I received your letter of November 22nd and certainly appreciate the attitude you have taken in this matter and while the application was made by me through your salesman, Mr. Elem, I feel that it is your place as treasurer and manager of your firm to insist that he furnish me with a bond or return my money, or your office with the application in order that you may issue me a bond.

"Trusting that you will take care of this matter and see that I am furnished with the necessary bond or checked immediately, I am

"Yours very truly,
"Vernon V. Sills.

"P. S. For your information I do not care to correspond with your salesman, Mr. Elem, in this matter as has been stated before, my confidence in him is such that I prefer to deal with you in straightening out this situation.

"VVS."

Other letters of similar import passed between the parties, plaintiff insisting that defendant straighten the matter out, and defendant, while not declining to do so, referring plaintiff back to Elem, until December 9th, when plaintiff wrote defendant stating that he would not accept the bond and demanding the return of the $360 paid. December 13th defendant sent plaintiff, by registered mail, the following letter, and enclosed therewith the bond and pass book mentioned therein:

"In answer to yours of the 9th, Mr. Elem was in the office this morning and has turned to us bond No. 34003 in the sum of $5,000, which has been transferred to your account, and we are sending the same to you together with pass book showing the first year paid."

This letter plaintiff declined to receive and it was returned to defendant. Thereafter plaintiff brought this action to recover the money.

He pleaded in substance the signing of the application, the payment of the $360, and the transaction substantially as stated above, and alleged:

"4. Plaintiff further states that the said defendant failed, neglected, and refused thereafter to either issue the bond pursuant to the application delivered to them and accepted by its agent, or to refund the said plaintiff the sum of $360 which he had paid to said defendant as the first premium on said bond.

"5. That thereafter and after an unreasonable delay in the issuance of said bond and after the refusal of said company to issue said bond pursuant to the application, the said plaintiff withdrew and rescinded his offer and application for said bond and demanded of the said defendant the sum of $360, or any part thereof, and that there is now due and owing to the said plaintiff from the said defendant the sum of $360, together with interest thereon at the rate of 6 per cent. per annum from the 22nd day of March, 1927, until paid."

Defendant answered by general denial, admitting the execution of the application for the bond by plaintiff and the payment of $360, as alleged in plaintiff's petition, and further alleged:

"This defendant further says that it was the understanding between the plaintiff and said J. S. Elem at said time, that the said J. S. Elem would procure from some bondholder to whom this defendant had already issued a bond of $5,000, an assignment of such bond to plaintiff, and that the application which plaintiff made for said first mortgage 6 per cent. savings bond would be complied with by the delivery of said bond

so assigned to plaintiff by the said J. S. Elem, instead of a bond issued by this defendant company to plaintiff.

"This defendant further avers that defendant was informed by the plaintiff of said understanding between plaintiff and the said J. S. Elem, prior to any revocation or attempted revocation by the plaintiff of the purchase of said bond, and that any delay in the issuance of said bond to plaintiff was caused by the terms of the agreement between the plaintiff and J. S. Elem."

Defendant also pleaded that it had never refused to issue the bond in accordance with the terms of the application and pleaded the tender of the bond on December 13, 1927, and further alleged:

"Defendant further avers that it is now and has been at all times ready and willing to deliver to said plaintiff a first mortgage 6 per cent. savings bond in accordance with the terms of said application. This defendant now offers to deliver into court said bond issued by this defendant company and complying with the terms and conditions of said application of the plaintiff to be delivered to the plaintiff and otherwise abide the further orders of the court."

Plaintiff replied by general denial.

Trial was had to the court without a jury, resulting in a general finding and judgment for plaintiff in the sum sued for, and defendant appeals.

The assignments of error are that the court erred in rendering judgment for the plaintiff; that the judgment is not sustained by sufficient evidence; and is contrary to law.

The only ground urged by defendant for reversal is that even though plaintiff had a cause of action against defendant for the return of the $360 for failure to deliver the bond, he waived his right to have the money returned to him by demanding performance of defendant's obligation to furnish the bond, and could not thereafter declare a forfeiture without giving defendant notice and a reasonable time to perform. But when attention is called to the fact that defendant did not plead waiver, it asserts that the evidence offered by plaintiff without objection showed such waiver, and that the pleading should be treated as amended to conform with the proof.

Defendant cites and quotes part of section 2050, vol. 3, Elliott on Contracts, and relies almost wholly upon the general rule there stated. However, a sentence in said section which appears to be peculiarly applicable to the facts in the case is omitted from the quotation. It is:

"But a right under a contract is not ordinarily waived by making an honest effort to induce compliance therewith by the party who seeks to avoid such compliance."

Clearly, from the letters of defendant it was seeking to avoid the responsibility of furnishing the bond under the application, and attempting to place the responsibility therefor upon Elem, its district manager, as an individual transaction undertaken by him on his own behalf. While it never did in so many words deny responsibility, it is plain that it was seeking to avoid same apparently because Elem had never sent in the application and had kept the $360. The most that is shown by plaintiff's letters is that he was making an apparent honest effort to induce defendant to furnish the bond.

In Louisville Packing Co. v. Crain (Ky.) 132 S. W. 575, it is held:

"Where one party to a contract seeks to avoid compliance therewith, the other party may, without waiving his rights, make an honest effort to induce compliance."

In the body of the opinion it is said:

"When one party to a contract seeks to avoid a compliance with its terms, we see no good reason why the other may not, without waiving his rights, make an honest effort to have the party in fault comply with his contract. Nor is any good reason assigned why this effort should be construed to reinstate or renew a contract which had been breached."

The same rule is recognized in Bologh v. Roof Maintenance Co., 112 N. Y. S. 1104.

Warner v. Page, 59 Okla. 259, 159 P. 264, is a case where commutation money was due under an oil and gas lease on July 22nd, and the lessee, from whom the money was due, on July 19th, sent an unsigned check to the bank designated as depository and made payable to it; the bank at once notified the lessor that it had the check; the lessor then directed that the check be returned and be properly signed and made payable to him. The check was not returned to the lessee by the bank until July 23, one day after the money was due, and the lease became subject to forfeiture. It was there held that the lessor did not waive his right to declare the lease forfeited, and especially so where lessee pleaded performance and failed to plead estoppel.

From the record we conclude that defendant neither pleaded nor proved a waiver by plaintiff of his right to demand the return of his money, and that the tender of the bond by defendant on December 13th came too late.

The judgment is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.